**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Perry Russell TUNNELL, Defendant-
Appellant.**

**No. 72-3787.**

United States Court of Appeals,
Fifth Circuit.

July 18, 1973.

Rehearing and Rehearing En Banc
Denied Oct. 31, 1973.

J. W. Tyner, Jerry Bain, Tyler, Tex., for defendant-appellant.

Roby Hadden, U. S. Atty., Tyler, Tex., Richard P. Slivka, Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Atty., Dept. of Justice, Tax Div., Washington, D. C., for plaintiff-appellee.

Before AINSWORTH, GODBOLD and INGRAHAM, Circuit Judges.

AINSWORTH, Circuit Judge.

■ Perry Russell Tunnell was convicted on each of three counts for willfully attempting to evade federal income tax during the years 1965, 1966, and 1967, in violation of 26 U.S.C. § 7201 (1970).[1] The central issue on appeal concerns the sufficiency of the Government's evidence based on the net worth method. We affirm.

I.

One of the essential elements which the Government had to prove was that taxpayer owed tax on at least some unreported income for each of the three years named in the indictment. Because taxpayer's records were inadequate, the Government utilized the so-called "net worth method" described and approved in the leading Supreme Court case of Holland v. United States, 348 U.S. 121, 125, 75 S.Ct. 127, 130, 99 L.Ed. 150 (1954):

> In a typical net worth prosecution, the Government, having concluded that the taxpayer's records are inadequate as a basis for determining income tax liability, attempts to establish an "opening net worth" or total net value of the taxpayer's assets at the beginning of a given year. It then proves increases in the taxpayer's net worth for each succeeding year during the period under examination and calculates the difference between the adjusted net values of the taxpayer's assets at the beginning and end of each of the years involved. The taxpayer's nondeductible expenditures, including living expenses, are added to these in-

---

1. Section 7201 reads as follows:

   Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

creases, and if the resulting figure for any year is substantially greater than the taxable income reported by the taxpayer for that year, the Government claims the excess represents unreported taxable income. In addition, it asks the jury to infer willfulness from this understatement, when taken in connection with direct evidence of "conduct, the likely effect of which would be to mislead or to conceal." Spies v. United States, 317 U.S. 492, 499 [63 S.Ct. 364, 368, 87 L.Ed. 418]. *See also* United States v. Newman, 5 Cir., 1972, 468 F.2d 791, cert. denied, 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973); Lee v. United States, 5 Cir., 1972, 466 F.2d 11. In the present case the Government determined the correct taxable income and tax to be the amounts set out below, compared to the taxable income and. tax actually reported by Tunnell on his returns, as follows:

| | Government Determination | | Tunnell Reported | |
| --- | --- | --- | --- | --- |
| Year | Income | Tax | Income | Tax |
| 1965 | $ 9,236.73 | $ 971.55 | $ 181.52 | $ 142.08 |
| 1966 | 35,579.77 | 5,942.14 | 2,241.98 | 113.33 |
| 1967 | 34,783.42 | 7,738.31 | (20,864.63) | –0– |

■ To rely on determinations of income by the net worth method, it was necessary that the Government establish Tunnell's opening net worth at the start of 1965 with reasonable certainty, introduce evidence supporting the inference that his net worth increased due to currently taxable income, and negate all reasonable explanations and leads furnished by Tunnell which were inconsistent with guilt. *See* Holland, 348 U.S. at 132, 135, 137, 75 S.Ct. at 134–136. In examining the record we find that the Government sustained its burden.

■ Based on a detailed financial analysis, the Government determined Tunnell's assets on December 31, 1964 to be $57,686.89, including cash on hand, cash in banks, the Pines Motel and Trailer Park, some farm land he inherited, mobile homes, automobiles, trucks, and deferred expenses. But he had offsetting liabilities of $64,447.55, so the Government set his opening net worth at a deficit of $6,760.66, which we find to. be fully supported by the record. Counsel for taxpayer objected to the Government's introduction into evidence of tax returns for 1962, 1963, and 1964, and when the jury during its deliberations requested the 1963 and 1964 returns, counsel also objected to the district judge's allowing the jury to see the returns again. These returns were admissible and could be viewed by the jury at its request, because the small amounts of income reflected in these returns were relevant to corroborate the asserted deficit net worth as of December 31, 1964. The returns consistently showed the taxpayer had little income during the prior three years. Furthermore, the district judge gave the jury a proper limiting instruction that the documents could only be considered for the limited purpose of determining Tunnell's opening net worth.

■ ■ The Government showed that the likely source of Tunnell's net worth increases was from taxable income, as opposed to exempt income, by showing that he could have had income from the Pines Motel other than that reported. Appellant objected to testimony that this motel, in addition to providing the taxable income generally expected, also provided Tunnell with an opportunity for income from prostitution activities. This was necessarily admissible to fulfill the Government's responsibility under *Holland* of showing a likely source for the unreported income over the three-year period. Tunnell, himself, volunteered the information to a Government agent that he had two to four girls working for him during all three years of 1965 through 1967 and that he made as much as $12,000 from their prostitution in one year.[2] This income was taxable even if it was unlawful. *See* James

2. This evidence thus differs from that presented in Armes v. Commissioner, 5 Cir., 1971, 448 F.2d 972, 975–976 n. 2, where the evidence of prostitution activities never reached beyond suspicion and innuendo.

v. United States, 366 U.S. 213, 219, 81 S.Ct. 1052, 1055, 6 L.Ed. 246 (1961).

The only leads furnished by taxpayer as inconsistent with guilt were that he had available $20,000 to $21,000 from the sale of a motel in Galveston during the prior tax year of 1964, that he "floated" checks, and that he borrowed money to live on during the years 1965 through 1967. The sale of the motel was reported on his 1964 return as a loss, and the correctness of that return was not disputed by the Government. Thus no tax was due on the proceeds received from the sale at an amount less than the basis. But contrary to appellant's assertion in his brief that he had $20,000 available as a result of the sale, testimony by one of two other people with interests in the motel indicates that a promissory note of about $15,000 had to be paid after the sale and the remaining $5,000 from the sale was divided among three people, so that Tunnell probably got less than $2,000.

"Floating" checks was defined as writing a check in excess of the amount in the bank account but then depositing money from another account in time to cover the check. Evidence indicates that Government agents thoroughly reviewed Tunnell's assets and liabilities and bank accounts to negate either his borrowing money or his floating checks as sufficient to account for the net worth increases.

## II.

■■ As inferred by the Supreme Court from the words "willfully attempts" in the statute, the second and third necessary elements for conviction are evil motive by the defendant Tunnell and an affirmative act to carry out his scheme to evade tax. See 26 U.S.C. § 7201 (1970); Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). See generally United States v. Bishop, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973). Here the consistent pattern of understating large amounts of income coupled with evidence of inadequate records kept by taxpayer permits an inference of willfulness sufficient to create a jury question. See generally Holland, supra, 348 U.S. at 139, 75 S.Ct. at 137; Holbrook v. United States, 5 Cir., 1954, 216 F.2d 238, cert. denied, 349 U.S. 915, 75 S.Ct. 605, 99 L.Ed. 1249 (1955). The requisite affirmative act can be found in the filing of false tax returns for each year in the indictment.

Appellant raises several other points which we have considered and find to be without merit.

Affirmed.