**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jose M. MONTALVO,
Defendant-Appellant.**

**No. 86–4682.**

United States Court of Appeals,
Fifth Circuit.

June 19, 1987.

E.P. Lobrano, Jr., Jackson, Miss., for defendant-appellant.

Ruth R. Harris, Asst. U.S. Atty., George Phillips, U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before CLARK, Chief Judge, BROWN, and JOHNSON, Circuit Judges.

CLARK, Chief Judge:

Dr. Jose M. Montalvo appeals from his conviction for conspiracy to defraud the United States by impeding the functioning of the Internal Revenue Service (IRS). 18 U.S.C. § 371.[1] His primary challenge is to the sufficiency of the evidence showing his intent to impede the IRS. We find the evidence sufficient to support his conviction, reject his other challenges, and affirm.

I.

Montalvo, a doctor at the University of Mississippi Medical Center, was arrested following an under cover operation investigating marijuana trafficking in Mississippi. Agent Robert M. Turner of the Mississippi Bureau of Narcotics, acting undercover, arranged a purchase of 600 pounds of marijuana from Junious C. Morgan. The marijuana, which actually weighed 427 pounds, was delivered by Linda Hawkins on April 15, 1985. Turner then negotiated with Morgan for the purchase of a larger quantity of marijuana. On May 2, 1985, during negotiations, Turner asked Morgan if he had a way to "clean up" the proceeds of the drug sales. Morgan responded that he, his wife, and Montalvo had a foreign corporation that Morgan used to "move his money around." Morgan explained that the corporation would issue fictitious loan papers, and that when Turner paid Morgan for the marijuana Morgan would wire the money out of the country disguised as a payment on a loan.

Turner agreed to pay Morgan $50,000 as partial payment for the marijuana previ-

---

1. The statute provides in relevant part:
   If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

ously delivered. They set up a meeting on May 29, 1985. Morgan also contacted Montalvo to bring documents for the foreign corporation to the May 29th meeting. Neither Turner nor Montalvo knew the other would be at the meeting. The meeting was recorded by a hidden microphone. For fifteen minutes the three discussed the possibility of setting up a foreign subsidiary for Turner's use. Montalvo assured Turner he could handle at least $250,000 in any denomination bills. At the end of the meeting Morgan and Montalvo were arrested and various documents were seized, including the ones brought by Montalvo as well as others Morgan had brought. The documents were a corporate charter for a Panamanian company named Montmor Internacional, S.A., a power of attorney authorizing Montalvo to do business for the company, a business agreement by which Montalvo appointed Morgan and his wife equal partners in Montmor, stationery listing Morgan as president and Montalvo as vice president, a joint venture agreement signed by Montalvo on behalf of Montmor purporting to show a $500,000 loan by Montmor to Morgan, a letter to a third party stating that Montmor had loaned Morgan $50,000, and another letter purporting to evidence a $1,000,000 loan from Montmor to Morgan.

Montalvo was indicted on three counts of an eighteen-count federal indictment. Count I charged Montalvo with conspiracy to possess marijuana with intent to distribute. Count II charged Montalvo with conspiracy to import marijuana. Montalvo was alleged to have joined the conspiracies by providing a money laundering service to disguise the illegal source of the income. Count VI charged Montalvo with conspiracy to defraud the United States by impeding the IRS in the ascertainment and collection of revenue by disguising the true source of United States currency. Co-defendant Morgan was indicted on sixteen counts of various drug and currency violations. Co-defendant Hawkins was indicted on five drug counts and pleaded guilty before trial.

Montalvo testified at trial in his own defense. His story was that Montmor was established to help refugees from Latin American nations get their wealth out of the currency of those nations and into American currency. Montmor is an acronym for "movimientos nacionales de transacciones monetarios para refugiados," which translates roughly as "national movements of monetary transactions for refugees." According to Montalvo, he attempted to arrange various business ventures that would allow the refugees to invest using foreign currency and be repaid in American currency. Those ventures included a commercial fishing enterprise, a shrimp farm deal, and a hot sauce deal. Montalvo testified that he thought Turner was a Haitian trying to get his money out of Haiti. Montalvo admitted, however, that none of his deals had been successful. Morgan's testimony generally supported Montalvo's story, although it was internally inconsistent in other ways. Morgan's wife, however, testified that the name Montmor was derived from Montalvo and Morgan. In addition, the one person whom Montalvo specifically claimed to have aided denied having any such dealings with him.

The jury acquitted Montalvo on counts I and II, related to conspiracies to possess and to import marijuana, but found him guilty on count VI, the conspiracy to impede the IRS. Morgan was convicted on all fourteen counts; he fled the country before the jury returned its verdict. Montalvo was sentenced to five years imprisonment and fined $10,000. He now appeals.

## II.

Montalvo's primary argument is that the evidence is insufficient to support his conviction. We will uphold the jury's verdict unless "it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979); *United States v. Basey*, 816 F.2d 980, 1000–02 (5th Cir.1987). All inferences from the evidence and all credibility determinations must be viewed in the light most favorable to the verdict. *Basey*, 816 F.2d at 1000–02; *see*

*Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

Montalvo does not challenge the sufficiency of the evidence linking him to Montmor or demonstrating the use of Montmor to conceal the source of currency. Indeed, the evidence is more than sufficient to show that Montalvo used Montmor to help Morgan surreptitiously get money out of the United States. The documents seized at the time of arrest list Montalvo as a vice president of Montmor or at least as having power of attorney for the company. And Morgan's wife testified at trial that Montmor stood for *Mont*alvo and *Mor*gan. Moreover, Morgan and Montalvo explained to Turner at the May 29th meeting that they were wiring money out of the United States disguised as loan repayments. The jury was entitled to disbelieve Montalvo's story about aiding refugees. The one person Montalvo claimed to have helped testified that she had never discussed the matter with him. Montalvo himself admitted at trial that his various deals had never gone through.

Instead, Montalvo contends that merely concealing or disguising the source of currency is insufficient to support a conviction for conspiracy to obstruct the IRS. He relies on *United States v. Enstam,* 622 F.2d 857 (5th Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981), and *United States v. Browning,* 723 F.2d 1544 (11th Cir.1984). In *Enstam,* the Fifth Circuit reviewed a conviction for conspiracy to impede the IRS through use of a scheme similar to the one involved in the present case. Enstam and his associates sent drug money out of the country and returned it to the United States in the form of fictitious loans. Enstam contended that the object of the conspiracy was only to hide the source of the money and not to impede the assessment and collection of taxes. The court expressed concern about the sufficiency of the evidence but reserved the question whether merely concealing the source of income is illegal after finding substantial evidence of intent to impede the IRS. 622 F.2d at 863 & n. 5. That evidence consisted of statements by the conspirators that the scheme was designed to

conceal information in the event of an IRS audit and advice to undercover agents that they could avoid taxes by reporting bogus business expenses and deducting fictitious interest payments. *Id.* at 861–62.

In *Browning,* the Eleventh Circuit dealt with the same issue in a case involving a money laundering scheme identical to the one in *Enstam.* Again the court did not decide whether merely concealing the source of income would be enough to support the conviction because the court found sufficient evidence of intent to obstruct the IRS. The conspirators in *Browning* expressed fear of an IRS audit and stated a desire to avoid paying any more taxes. 723 F.2d at 1548. One conspirator also bragged that he had bribed an IRS agent who was auditing him. *Id.*

Montalvo argues that the evidence present in *Enstam* and *Browning* showing an intent to obstruct the IRS is lacking in this case. The evidence, Montalvo submits, shows that he did not know Morgan's money came from the sale of illegal drugs. He finds support in Morgan's warning to Turner not to discuss drugs in front of Montalvo and in Morgan's statement that Montalvo knows "where [the money] goes" and "that's all." Montalvo also points to his acquittal on counts I and II, which charged him with conspiracy to disguise the "illegal source" of drug money, as the jury's finding that he did not know the money was drug money. Montalvo asserts that in fact he told Turner to pay taxes. As a result, according to Montalvo, this court must reach the question reserved in *Enstam* and *Browning* and should hold that concealing the source of money alone is insufficient to support his conviction.

■ On the facts of this case, we find no need to reach the question reserved in *Enstam* and *Browning.* This fact situation is controlled by the holding rather than the dicta in those cases. The evidence in this case was sufficient to permit a reasonable jury to conclude that Montalvo intended to participate in a conspiracy to launder money, meaning that he agreed to a procedure that would disguise the true source of the

money, with the obvious intent and purpose of impeding and obstructing the IRS in the collection of revenue and the performance of its duties.

First, the evidence was sufficient for the jury to find Montalvo's knowing participation in a scheme to launder untaxed money. The evidence showing Montalvo's involvement with Montmor was discussed earlier. In addition, at the May 29th meeting, Morgan assured Turner that Montalvo knew what was "going on." Morgan did tell Turner not to discuss drugs in front of Montalvo, but then he reassured Turner that Montalvo knew "pretty much what the deal [wa]s" so that there was no need to discuss it. A reasonable jury could infer that Montalvo knew Morgan's money was obtained in a way that no taxes had been paid on it.

Montalvo's acquittal on counts I and II does not require a different conclusion. Inconsistent verdicts do not require reversal. *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 476–77, 83 L.Ed.2d 461 (1984). The purportedly inconsistent verdict may merely reflect the jury's leniency, not that it was unconvinced of the defendant's guilt. *Id.* at 477. The defendant's protection lies in sufficiency of the evidence review, and that review is to be "independent of the jury's determination that evidence on another count was insufficient." *Id.* at 478. Thus, our review of the sufficiency of the evidence supporting Montalvo's conviction must be uncolored by his acquittal on the other counts.

Second, the evidence is also sufficient for the jury to find that one purpose of the conspiracy was to impede the IRS. In Montalvo's presence, Morgan assured Turner that the money laundering transaction was structured so that the average American could not understand it. Montmor's documents were kept in Spanish "in case anybody wants to get the IRS on us." Similarly, Montalvo gave Morgan the fictitious loan papers so that "the minute somebody looks at [the money] it's a loan." These statements are similar to the statements made by the defendants in *Enstam* and *Browning*.

Montalvo contends that he told Turner he would have to pay taxes. Montalvo is referring to the following exchange:

TURNER: And that's a, well let me ask you this, the, the, uh, the loans supposedly that we're doing from this corporation in Panama, they're, they'll be, uh, uh, tax free as far as in the United States, isn't that right?

MORGAN: Yea, it's

MONTALVO: Well it depends on what you do with the money.

TURNER: Uh huh.

MONTALVO: They don't tax the loan. They tax what you do with the money.

TURNER: What, what you do with the money.

MONTALVO: If, if you make, if you invest it let's say if you put it in a, on a, uh, uh, other company or CD

MORGAN: CD's

MONTALVO: CD's you have to pay the interest.

MORGAN: Interest, yea.

TURNER: Well won't, won't

MONTALVO: You pay tax on the interest but you won't pay tax on the, uh

TURNER: Well what if, what if you, what if you draw me up a loan agreement say for two hundred and fifty thousand dollars

MONTALVO: Uh huh.

TURNER: to just, well, can I, can I spend that though as I wish or, you know, uh, uh

MORGAN: Oh, yea (unintelligible)

TURNER: I'm talking about to get around the tax situation. See what

MONTALVO: Well

TURNER: I'm saying?

MONTALVO: Yea. Well the, the, uh, the 'cause what you do with the money is whether they decide to tax you or not.

In fact, the exchange further demonstrates the tax avoidance purpose of the conspiracy. Morgan agrees that the money that supposedly was a loan would be tax free. Montalvo does warn Turner he will have to pay taxes, but only on interest earned on the money, not on the untaxed money it-

self. The evidence before the jury, taken in the light most favorable to the verdict, shows that a purpose of the conspiracy was to impede the IRS in the collection of revenue and demonstrates Montalvo's knowing involvement in that conspiracy. That is sufficient to sustain his conviction.

■ Montalvo also challenges the sufficiency of the evidence supporting the three overt acts alleged in the indictment. The three overt acts alleged were that Morgan arranged a meeting among himself, Montalvo, and others to discuss the conspiracy; that Morgan and Montalvo met with others to discuss the formation of a fictitious or "shell" corporation and the use of foreign bank accounts to conceal United States currency; and that Montalvo gave Morgan documents pertaining to that "shell" corporation. Montalvo contends that the evidence was insufficient because Montalvo and Turner did not know the other would be at the meeting and because they discussed forming a subsidiary, not a shell corporation. These arguments are meritless. The fact that Montalvo and Turner did not collectively participate in planning the meeting has nothing to do with the fact that a meeting was arranged to discuss the conspiracy. That they discussed forming a subsidiary rather than a "shell" corporation is immaterial to the overt act charged. Even though a subsidiary is a true corporation, it can still be a shell if it had no valid business purpose. Montalvo attended the meeting, discussed Montmor, and provided documents dealing with Montmor. Montmor was used to launder money. The evidence was sufficient to establish the overt acts in furtherance of the conspiracy to impede the IRS.

## III.

Montalvo challenges several other aspects of his case as further demonstrating the insufficiency of the evidence to support his conviction. These other aspects do not involve the evidence presented to the jury and so do not influence our review of the sufficiency of the evidence. *See Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). Construing his contentions liberally we will address them as independent grounds of error.

■ First, Montalvo contends that the indictment as submitted to the jury was rendered "hopelessly enigmatic" by the district court. The district court granted partial summary judgment at trial for Montalvo on count VI. The court physically deleted references in that count to obstructing the Customs Service in collection of data and reports on currency transactions. But the court did not delete from the indictment citations to title 31 of the United States Code and the Code of Federal Regulations, dealing with currency transactions. This failure, however, could not have prejudiced Montalvo because the jury did not have the substance of title 31 before it.

■ Next, Montalvo objects to the bill of particulars supplied by the government. He argues that the bill of particulars did not allege any intent to defraud the IRS. The purpose of a bill of particulars is to provide a defendant with more detail about the charges than is provided in the indictment. *United States v. Hajecate,* 683 F.2d 894, 898 (5th Cir.1982), *cert. denied,* 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 298 (1983). The bill is not a formal charge. *Id.* at 897–98. Here the indictment alleged intent to defraud the United States by impeding the IRS, which is sufficient. *See United States v. Klein,* 247 F.2d 908 (2d Cir.1957), *cert. denied,* 355 U.S. 924, 75 S.Ct. 365, 2 L.Ed.2d 354 (1958).

■ Montalvo also maintains that, at the hearing held pursuant to *United States v. James,* 590 F.2d 575 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), the government failed to show any evidence independent of the co-conspirator's statements that justified admitting those statements with respect to count VI. He evidently refers to statements made by Morgan to Turner on May 2nd that Morgan moved his money around by using a corporation owned by himself, his wife, and Montalvo. Montalvo was not present when Morgan made the statements. Montalvo may also be referring to statements made by Morgan to Turner be-

692

fore Montalvo arrived at the May 29th meeting. The district court found that substantial independent evidence existed, relying in part on the "open discussions of avoiding the tax laws of the United States" among Morgan, Turner, and Montalvo at the May 29th meeting. The district court's finding is not clearly erroneous. *See United States v. Nichols*, 695 F.2d 86, 91 (5th Cir.1982).

Finally, Montalvo argues that the jury was inadequately instructed on count VI. Montalvo did not object to the court's failure to instruct, and the court's instructions on conspiracy, specific intent, and its description of IRS functions were sufficient to apprise the jury of its assigned task. We find no reversible error.

The evidence was sufficient to support Montalvo's conviction and his other contentions of error are meritless. The judgment of conviction is

AFFIRMED.