UNITED STATES of America,
Plaintiff–Appellee,

v.

Bobby M. SMITH, Defendant–Appellant.

No. 88–4886.

United States Court of Appeals,
Fifth Circuit.

Dec. 4, 1989.

Charles W. Wright, Jr., Palmer, Wright & Williamson, Meridian, Miss., for defendant-appellant.

Ruth R. Harris, Asst. U.S. Atty., George Phillips, U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before DAVIS and SMITH, Circuit Judges, and LITTLE, District Judge.[1]

1. District Judge of the Western District of Loui-

LITTLE, District Judge:

The conviction of Bobby M. Smith of one of four counts of tax evasion prompts this appeal. We AFFIRM the conviction.

## BACKGROUND

Smith was convicted of the willful attempt to evade the payment of income tax for calendar year 1983. Specifically, the count of the indictment upon which Smith was convicted provides in part:

That on or about July 16, 1989, ... Bobby M. Smith ... did willfully attempt to evade and defeat a large part of the income tax due and owing by him and his spouse to the United States of America for the calendar year 1983 by preparing and causing to be prepared, and by signing and causing to be signed, a false and fraudulent joint U.S. Individual Income Tax Return Form 1040, on behalf of himself and his spouse, which was filed with the Internal Revenue Service, wherein it was stated that there was a negative taxable income for said calendar year of $10,507.20, and that the amount due and owing thereon was zero, whereas, as he then and there well knew and believed, their joint taxable income for the said calendar year was the sum of $81,361.30, upon which said joint taxable income there was owing to the United States of America an income tax of $29,570.64.

In violation of Title 26, United States Code, Section 7201.

Smith asserts that the jury verdict requires reversal as it was contrary to the law and the weight of the evidence in six specific areas. Alternatively, Smith seeks a new trial claiming that he was prejudiced by the trial tactics of the government representatives. We will address each of appellant's concerns. We will measure those concerns by this circuit's standard of review which requires us to uphold a jury's verdict unless that verdict is based upon record evidence which no rational trier of fact could have found guilt beyond a reasonable doubt. *United States v. Montalvo*, 820 F.2d 686, 688 (5th Cir.1987).

siana, sitting by designation.

APPELLANT'S OPENING NET WORTH

Before discussing the error asserted by appellant, it is best for us to describe generally the mechanics of a net worth case. An income tax return reflects the taxpayer's statement to the government that the taxpayer received money (or items of value) and that the receipts, after appropriate deduction, were subject to the applicable tax. The government may question a taxpayer's voluntary disclosure and certification of correctness by employing one or both of two generally accepted analytical methods. The government can present evidence that a specific item of income was not disclosed on the return, i.e., taxpayer did not include wages from his employment with XYZ Corporation or his interest income from a savings account with ABC Homestead. The government may also demonstrate that specific deductions were not experienced by the taxpayer, or were inflated. This procedure is known as the specific items theory. Another method which may be employed is the net worth analysis. Simply stated, an increase in a taxpayer's patrimony must be traced to acquisitions with after tax income, donations or non-taxable transactions. If these sources fail to explain the increase and the increase can reasonably be attributed to sources which should have been reported, but were not, the taxpayer may well be convicted of tax fraud.

■ The government utilized both the specific items method and the net worth method in prosecuting its case against the taxpayer. For the return year of the taxpayer's defeat, 1983, only the net worth method was invoked. The net worth method has long been approved as a tool to prove a willful violation as required by 26 U.S.C. § 7201. *See Holland*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *Tax Management Criminal Tax Procedure*, 162–Second A10–13. Essential to this methodology is the taxpayer's opening net worth. The government must prove the taxpayer's opening net worth for calendar year 1983 with reasonable certainty. *Holland*, 348 U.S. at 132, 75 S.Ct. at 133–34; *United States v. Terrell*, 754 F.2d 1139,

1146 (5th Cir.), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3505, 87 L.Ed.2d 635 (1985); *United States v. Sorrentino*, 726 F.2d 876 (1st Cir.1984). We join the Seventh Circuit in observing that sloppy or mediocre financial and accounting evaluation upon which a conviction is obtained can be the genesis for reversal. *United States v. Achilli*, 234 F.2d 797 (7th Cir.1956), *aff'd on other grounds*, 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918 (1957).

■ But evidence of irresponsible accounting and financial analysis is lacking in the instant case. The contrary is revealed by the record. Agent Lindsay's testimony as to the taxpayer's cash on hand of $31,-234 was supported by evidence that the taxpayer possessed three cashier's checks and cash totalling that sum. While we recognize that slipshod methods of financial analysis will not be tolerated, one need not be letter perfect. Reasonable certainty is required but not mathematical exactitude. *Terrell*, 754 F.2d at 1146. At no time during the investigation did the defendant or his spouse disclose evidence of a cash hoard. At trial the defendant's spouse claimed to have cash in a vase in the sum of $23,000, that she had paid $23,-000 cash for an automobile and that she saved a large sum of money from cash gifts from her parents. The existence and source of these cash transactions were never disclosed to the investigating agent. The defendant's spouse merely told the agent about a small amount of cash on hand and didn't believe the agent's questions were applicable to other funds and transactions. To the same extent, the taxpayer concludes that a corporation was a receptacle of his funds and that the value of the corporation should be included in the opening net worth. There is no evidence that funds were diverted by the taxpayer to his corporation or that the corporation had assets actually belonging to the taxpayer or that the taxpayer parked assets in the corporate name. The government's opening net worth conclusions had firm support in fact and were prepared with reasonable certainty. The return subject to scrutiny was that filed for calendar year

1983. Loan repayments to the taxpayer in other years were too remote to enter into an opening inventory figure.

The defendant's argument as to the appreciated value of the family home not having been accounted for by the agent is also without merit. The house was built in 1975 at a cost unknown to the taxpayer. The house was owned by the taxpayer at the beginning and end of the year in question. The unaccounted for appreciation, if any, plays no part in this controversy. It's absence does not distort the opening or closing inventory. *United States v. Schafer*, 580 F.2d 774, 778 (5th Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978).

The complaint that the opening net worth figure for 1983 does not include bearer bonds owned by the taxpayer is without effect. The agent was unable to establish the year of acquisition or the cost of the investment. The agent did remove from net worth calculations all interest paid on the bonds as well as money received by the taxpayer for bond redemption. Again, distortion is absent.

## FAMILY NET WORTH

█ Another area of alleged defective analysis is the failure of the government to exclude assets of the defendant's spouse and child. The agent testified, and her schedules reveal, that the income of the defendant's daughter and gifts to defendant's wife and daughter were excluded before arriving at a final net worth determination. The agent did not present a family net worth calculation. Only the financial condition of defendant and spouse appears. No confusion or adulteration is present. The fabric of the financial blanket is so closely woven that a computation of net worth on the joint income of the spouses is clearly permissible. *See United States v. Brown*, 667 F.2d 566 (6th Cir. 1982); *United States v. Giacalone*, 574 F.2d 328 (6th Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978).

## A LIKELY SOURCE OF TAXABLE, BUT UNREPORTED INCOME

█ The government is required to prove likely sources of unreported income or negate nontaxable sources of income. *Holland*, 348 U.S. at 137, 75 S.Ct. at 136; *United States v. Massei*, 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958). A likely source of income, according to the government, was proved when evidence was presented showing that defendant actively participated in the operations of businesses which he owned including furniture stores, a jewelry store, a cemetery monument company, a pawn shop and a recreational center. Further, the defendant's investments included producing mineral interests, real estate and stock, bonds and commodities. The record reflects that all of those endeavors provided liquid funds. Evidence was also presented that defendant engaged in gambling activities involving significant sums. Thus, a likely source of nonreported but taxable income was clearly indicated. "Proof of a likely source from which the jury could reasonably find that the net worth increases sprang is sufficient." *Holland*, 348 U.S. at 138, 75 S.Ct. at 136.

## FAILURE TO NEGATE THE EXISTENCE OF NON–TAXABLE SOURCES OF MONEY

█ The defendant also asserts that the government failed to negate the presence of non-taxable funds. The government counters that the only lead given it by defendant was family gifts from defendant's in-laws. The record reflects that the agent did make deductions for gifts and inheritances. Gift deductions were allowed to the maximum authorized by law. No evidence exists that taxpayer received gifts in excess of the statutory non-taxable amount. In fact, gift tax records for defendant's in-laws were examined for the years 1975 through 1983. No returns were unearthed supporting gifts in excess of the amounts deducted by the government. The examination conducted by the government was thorough within the meaning of *Massei* and *United States v. Hiett*, 581 F.2d 1199, 1202 (5th Cir.1978). The govern-

ment did what was required. It made a reasonable investigation into the only lead supplied by the taxpayer, and the taxpayer received the maximum benefit from that lead.

## EXCLUSION OF TESTIMONY FROM EXPERT WITNESS

■ The defendant presented evidence from an expert witness, one William Jack Sykes. Mr. Sykes is a former Special Agent of the Internal Revenue Service. Currently he is in private business appearing frequently in court to analyze financial transactions. He had the capacity to sift the information presented by the government and attack the credibility of the net worth determinations made by the government.

The crux of Sykes' intended, but disallowed, testimony was that if the taxpayer controlled corporation had been the source of taxpayer's net worth bulge, the transaction would have been a non-taxable transaction. Or, more simply, monies received by taxpayer from his controlled corporation would have been non-taxable as a return of invested capital and not a tainted source of unreported, but taxable, income. The government objected to this line of questioning reasoning that the consequence of withdrawal of funds from a controlled corporation was mere speculation. Evidentiary rulings are matters within the sound discretion of the trial judge and will not be reversed absent an abusive discretion. *United States v. Reed,* 715 F.2d 870, 875 (5th Cir.1983). Here, no evidence had been introduced that the defendant had in fact acquired funds from the corporation. Expert testimony is admissible but only to expound upon facts and evidence. The exclusionary ruling was proper. *United States v. Fogg,* 652 F.2d 551, 556 (5th Cir. 1981), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1751, 72 L.Ed.2d 162 (1982).

## WILLFULNESS

■ It is conceded that the government must prove beyond a reasonable doubt that the defendant willfully attempted to evade the payment of a proper income tax. It is true, as the taxpayer asserts, that the word "willfully" means something more than carelessness or simple negligence. *United States v. Bishop,* 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973). A voluntary intentional violation of a known legal duty must be proved by the government. *United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976); *United States v. Skalicky,* 615 F.2d 1117, 1120 (5th Cir.), *cert. denied,* 449 U.S. 832, 101 S.Ct. 100, 66 L.Ed.2d 37 (1980). In this case, the government presented evidence of the taxpayer's conduct in filing and signing a return reflecting a negative income in excess of $10,000 when in truth and in fact the proper income experienced by the taxpayer exceeded $88,000. That error is so egregious, when considered in the light of taxpayer's acumen as an entrepreneur, as to fulfill the government's duty to prove willfulness. *United States v. Tunnell,* 481 F.2d 149, 152 (5th Cir.1973), *cert. denied,* 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974); *Skalicky,* 615 F.2d at 1120.

## PREJUDICIAL TRIAL TACTICS

■ The appellant claims that the grand jury process was abused by the government in that Special Agent Lindsay gave false testimony to the grand jury. Specifically, according to the appellant, Lindsay lied when she stated that taxpayer had not reported interest income from a Texas savings and loan association. The agent admitted at trial that while her grand jury information was accurate based upon the evidence she had at the time, it was inaccurate based upon information elicited from the savings and loan association at trial. The entire vignette was subject to rigorous cross-examination. The grand jury testimony was surrendered to the defendant prior to trial. If the indictment had been obtained by false testimony, the vehicle to obtain its dismissal was by a pretrial motion as required by Rule 12(b) of the Federal Rules of Criminal Procedure. The post-trial motion comes too late.

■ Over the defendant's objection, evidence of the defendant's proclivity to gam-

ble was introduced. The evidence was relevant to prove a likely source of unexpected income. The defendant's complaint is based on the government's pretrial denial that it would introduce the defendant's gambling escapades and that the probative evidence of social misconduct is outweighed by its prejudicial effect. The defendant's concerns are misplaced as the trial court did not abuse its discretion. *Reed*, 715 F.2d at 875. When confronted with knowledge that evidence of gambling would be introduced, counsel for the defendant complained but refused the court's offer to request a continuance of the trial. The trial judge afforded the defendant's counsel time to interview the government's witnesses on the issue of gambling. No prejudice to the defendant resulted. *See United States v. Bockius*, 564 F.2d 1193, 1197 (5th Cir.1977); *United States v. James*, 495 F.2d 434, 437 (5th Cir.), *cert. denied*, 419 U.S. 899, 95 S.Ct. 181, 42 L.Ed.2d 144 (1974).

As we have stated, the government is required, under *Holland*, 348 U.S. at 137, 75 S.Ct. at 136, to demonstrate a likely source of unreported income. If that likely source is gambling winnings, then the evidence of gambling is relevant and admissible. Suppression of that evidence cannot be denied when the government is required to disclose that very evidence. *Tunnell*, 481 F.2d at 151.

■ During closing argument, a government attorney invited the jury to recall that the defendant didn't wear the expensive jewelry to trial that he had been seen wearing prior to trial. Defendant's counsel equated that remark with prohibition against commenting on the defendant's failure to testify in his own behalf. In parsing the prosecutor's phrase in this circuit, we must apply the test established by *Samuels v. United States*, 398 F.2d 964, 968 (5th Cir.1968), *cert. denied*, 393 U.S. 1021, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969), and cited with approval in *United States v. Harbin*, 601 F.2d 773, 777 (5th Cir.1979). We must determine, according to those authorities, if "it can be said that the prosecutor's manifest intention was to comment upon the accused's failure to testify [or]

was ... of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." A reading of the record does not support appellant's contention. It is not evident that the attorney's comment was a manifest intention to bring to the jury's attention the fact of defendant's failure to testify. The attorney opined only upon the absence of jewelry on the defendant's person. No reasonable juror could have received that observation as a comment on the defendant's failure to testify. We also note that the instructions to the jury clearly emphasize that the defendant need not testify and no inference may be drawn from his failure to do so. If any harm had been created by counsel's comments, it was of a minor nature more than offset by the court's instructions. *United States v. Brown*, 546 F.2d 166, 173 (5th Cir.1977); *Harbin*, 601 F.2d at 777; *United States v. White*, 444 F.2d 1274, 1277 (5th Cir.), *cert. denied*, 404 U.S. 949, 92 S.Ct. 300, 30 L.Ed.2d 266 (1971); *United States v. Toler*, 440 F.2d 1242, 1243 (5th Cir.1971); *United States v. Cerullo*, 435 F.2d 142, 143 (5th Cir.1970).

Refusal to give five jury instructions is the final trial error on the defendant's schedule. We must review the court's charge in its entirety and in the light of the trial and closing argument. *United States v. Welch*, 810 F.2d 485, 488 (5th Cir.), *cert. denied*, 484 U.S. 955, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987). Although defendant's brief alleges court error in refusing instructions # 27 and # 32, defendant fails to describe even generally the error. The substance of charge 27 sets out the elements of the offense and charge 32 deals with presumption of innocence. The court refused the instructions tendered by the defendant as repetitive. Virtually identical charges were given by the court. The instructions were properly omitted.

■ Tendered instruction 28 distinguishes between civil and criminal tax fraud. Refusal to charge was based on the immateriality of the charge in a criminal trial. Such a change was correctly withheld as confusion could only be produced. *See Scheib v. Williams–McWilliams Co.*, 628 F.2d 509, 511 (5th Cir.1980).

Denied instruction 37 explores the meaning of signing a return prepared by one other than the taxpayer. Counsel's brief does not identify the error or cite any authority that the proffered charge is a desideratum in a tax fraud jury charge. We have reviewed the entire charge and find that the court's reference to the returns and the "willfulness" required by law as more than satisfactory to guide the jury in its deliberation. The charge was properly refused.

The trial judge refused defendant's instruction # 39. The desired instruction, as submitted, reads:

> The government has utilized the net worth method of proof in this case. Any proof as to any specific items of omitted income may be considered by you only as corroborative evidence of the net worth proof.

The trial court properly refused to give charge # 39. The government used a two prong approach to demonstrate taxable income omissions by the defendant on four annual tax returns. One was circumstantial proof of a net worth increase from other than reported income. The other was direct proof of specific items of income which the taxpayer had failed to report. *Holland* supports the government's methodology. Taxpayer's reliance in this circuit's decision in *United States v. Horton*, 526 F.2d 884 (5th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976), is misplaced. The *Horton* case involved bank deposits to corroborate specific items of income (receipt of attorney fees from clients) which the taxpayer neglected to report on his returns. But, as we have said, the government used the bank deposits as circumstantial evidence of unreported income *in addition to* specific items of unreported income. In sum, the instructions given and those refused present no reversible error.

AFFIRMED.