GARY J. BELLINGER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bellinger v. Commissioner
Docket No. 1735-94.
United States Tax Court
T.C. Memo 1995-443; 1995 Tax Ct. Memo LEXIS 442; 70 T.C.M. (CCH) 734; September 19, 1995, Filed *442 Decision will be entered for respondent. William M. Ravkind, for petitioner. Linda L. Wong, for respondent. WHALEN, Judge WHALEN
MEMORANDUM FINDINGS OF FACT AND OPINION WHALEN, Judge: Respondent determined the following deficiency in and additions to petitioner's 1988 Federal income tax: Additions to Tax
Deficiency
Sec. 6653 (a) (1)
Sec. 6661 (a)
$ 41,070
$ 2,053
$ 10,268 Unless stated otherwise, all section references are to the Internal Revenue Code as in effect during 1988. After concessions, the issues remaining for decision are: (1) Whether petitioner failed to report gross receipts of $ 102,200; (2) whether petitioner is entitled to deduct legal fees of $ 21,000 as claimed on Schedule C of petitioner's 1988 return; (3) whether petitioner is liable for an addition to tax under section 6653(a)(1) for negligence or disregard of rules and regulations; and (4) whether petitioner is liable for an addition to tax under section 6661(a) for a substantial understatement of tax liability. FINDINGS OF FACT Some of the facts have been stipulated by the parties. The Stipulation of Facts filed by the parties and the exhibits attached thereto are incorporated herein *443 by this reference. Petitioner resided in Dallas, Texas, at the time the petition in this case was filed. For calendar year 1988, petitioner filed a joint income tax return with his spouse, Mrs. Sheila J. Bellinger. In due course, respondent issued a single notice of deficiency in which respondent determined the tax deficiency and additions to tax mentioned above. Petitioner and his wife filed separate petitions in this Court each asking for redetermination of respondent's determination. Both petitions were consolidated for trial, briefing, and opinion. Thereafter, Mrs. Bellinger and respondent submitted a stipulated decision which was entered by the Court and disposed of Mrs. Bellinger's case. During the year 1988, petitioner was involved in the operations of a medical equipment company called American Medical Laser, Inc. (AML), which was in the business of leasing medical laser equipment. AML was managed by petitioner and Mr. Steve Hibler. It was a subsidiary of AML International Ltd. (AMLI). Following audit of petitioner's 1988 income tax return, respondent found that during 1988 petitioner had received gross income totaling $ 109,700. Petitioner had reported gross sales of $ *444 7,500 on the Schedule C, Profit or Loss from Business (Sole Proprietorship), attached to his 1988 return. Accordingly, respondent determined that petitioner had realized unreported income during 1988 of $ 102,200. Respondent also determined that petitioner was not entitled to a deduction of $ 21,000 for legal and professional fees, as claimed on petitioner's Schedule C. Set out below is a list of the source and amount of each of the income items that petitioner received during 1988: Date
Description
Amount
1/20/88
Check 017 from AML's acct. 17764 at Premier Bk.
$ 5,000
1/25/88
Check 005 from AML's acct. 17764 at Premier Bk.
15,000
1/27/88
Check 1295 from AML's acct. 17764 at Premier Bk.
15,000
2/01/88
Check 1306 from AML's acct. 17764 at Premier Bk.
1,000
2/03/88
Check 1310 from AML's acct. 17764 at Premier Bk.
3,200
2/15/88
Check 1340 from AML's acct. 17764 at Premier Bk.
7,500
5/09/88
Withdrawal from AML's acct. 1777-2 at Premier Bk.
1,000
6/03/88
Withdrawal from AML's acct. 1778-0 at Premier Bk.
2,500
7/18/88
Transfer from First Nat. Bk. of Kennedale
2,000
(First Nat.) (SH Inv)
7/19/88
Transfer from 1000603, First Nat. (SH Inv)
2,000
8/25/88
Transfer from 1000603, First Nat. (SH Inv)
22,000
8/29/88
Transfer from 1000603, First Nat. (SH Inv)
4,000
8/30/88
Check 44 from 1000603, First Nat. (SH Inv)
14,500
11/09/88
Deposit from 20438, client tr. acct. at Premier Bk.
15,000
Total
109,700
*445 Each of the seven checks listed above was made payable to petitioner or to Premier Bank and was endorsed by petitioner. Check No. 1306, dated February 1, 1988, in the amount of $ 1,000, contains the notation "petty cash". Check No. 1310, dated February 3, 1988, in the amount of $ 3,200, contains the notation "SWMS". Check No. 1340, dated February 15, 1988, in the amount of $ 7,500, contains the notation "payroll". Both of the cash withdrawals listed above were made from AML's account at Premier Bank. They were made using nonnegotiable bank forms signed by petitioner. Each of the four transfers listed above reflects a transfer of cash from an account at the First National Bank of Kennedale in the name "SH Investments" to an account owned by petitioner at the same bank. It appears that the SH Investments account was owned by petitioner's business associate, Mr. Steven Hibler. The deposit of $ 15,000 listed above was made into a client trust account maintained by petitioner's attorney, Mr. John P. Covington, on petitioner's behalf. The funds for this deposit came from a check dated November 7, 1988, drawn by Key Financial Services, Inc., in the amount of $ 162,000, and made payable *446 to AML. The check was endorsed by petitioner and his attorney, Mr. Covington, and it was deposited into three client trust accounts maintained by Mr. Covington. As mentioned above, $ 15,000 was deposited into petitioner's trust account. The amount of $ 67,000 was deposited into a client trust account maintained by Mr. Covington under the name "S.H. Investments-J.P.C.", and $ 80,000 was deposited into a client trust account under the name "American Medical Laser Inc." In 1992, petitioner was charged in the U.S. District Court for the Northern District of Texas, Dallas Division, with two counts of mail fraud under 18 U.S.C. section 1341 for engaging in a fraudulent equipment-leasing scheme during 1992. The U.S. attorney's factual resume filed in the District Court describes the scheme as follows: defendant Gary J. Bellinger engaged in a scheme to defraud equipment leasing companies of money by fraudulently representing to the companies that Dallas area doctors either owned or were purchasing pieces of medical [sic] which they would sell to the leasing companies with the understanding that the equipment would be leased back to the doctors. *447 * * * * Bellinger never intended to deliver the equipment as promised and in fact the equipment which was the subject of Bellinger's scheme never existed.
Petitioner pled guilty to both counts of the information and was sentenced to 15 months in prison. OPINION Respondent reconstructed petitioner's gross receipts for 1988 using the specific items method of proof. See generally United States v. Smith, 890 F.2d 711, 713 (5th Cir. 1989); United States v. Horton, 526 F.2d 884, 886 (5th Cir. 1976). According to respondent's reconstruction, petitioner had realized gross income during 1988 in the amount of $ 109,700, consisting of the 14 specific items described above. Respondent's determination of a deficiency in petitioner's tax, based upon that reconstruction, is presumed correct, and petitioner bears the burden of proving it wrong. Rule 142. All Rule references are to the Tax Court Rules of Practice and Procedure. At the outset, we note that petitioner complains in his post-trial brief that petitioner's business records were unavailable at trial "because they had been removed by one of his business associates with *448 whom he was having a dispute." Petitioner also complains that the bank records of petitioner's various transactions were not available at trial because "the banks involved have been closed by the FDIC." While petitioner's post-trial brief makes general mention of these matters, it fails to delineate any attempt made by petitioner to obtain these documents. We also note that the Trial Memorandum For Petitioner Gary J. Bellinger, received by the Court on November 22, 1994, less than 2 weeks before the trial of this case, states that petitioner's attorney is "unable to provide summary of facts because [he] cannot locate client." Furthermore, it appears that petitioner failed to seek records in the possession of Mr. Chris Payne, an attorney with the Branson law firm, who had represented AML and AMLI, and who had collected various records concerning the activities of petitioner and his business associate, Mr. Hibler. At trial, petitioner's attorney initially sought a continuance "to review the documents at the Branson office, which we just found out about, to see if they do indeed provide any substantiation of the taxpayer's claim." Petitioner's attorney suggested: I imagine Mr. *449 Payne could probably tell me whether or not he has got his personal -- the agent said they don't have his [petitioner's] personal records, which may end it. Because all we are looking for is his personal bank records of his personal account to see if we can show the business expenses * * * and if Mr. Payne tells me they don't have them, I respect Mr. Payne enough that I would take his word for it.
The Court directed petitioner's attorney to make that inquiry of Mr. Payne. Based upon that information, the Court suggested that it would give petitioner's attorney "an opportunity to remake your application" to inspect the records held by Mr. Payne's firm. The Court further stated as follows: If there are records that show that that money went through his hands, and were paid -- and was paid for business expenses, I would like to know about it. But I don't want to spend a week, or month, going through 60 boxes of documents to do it.
However, when this case was recalled on the following day, petitioner's counsel failed to raise this matter and failed to remake his application to review the records held by Mr. Payne's law firm. Petitioner acknowledges that "receipts by taxpayers *450 are includable in gross income unless otherwise explained." Petitioner, however, advances no legal or factual basis to overcome respondent's determination that each of the 14 specific items, described above, is includable in petitioner's gross income for the year 1988. Similarly, petitioner does not take issue with respondent's use of the specific items method to reconstruct his income for 1988. The only argument advanced by petitioner in his post-trial brief is that five of the specific items that were included in respondent's determination of his gross income, together with a sixth item that was not part of respondent's determination, are deductible business expenses. Petitioner's post-trial brief, which is less than four pages in length, argues that the six expenditures "were used to pay those business expenses identified by the Taxpayer, including attorneys fees incurred in business litigation or services provided by the attorney in Taxpayer's business, American Medical Laser." We note that petitioner did not contest the following nine specific items, totaling $ 78,000, that respondent included in petitioner's gross income for 1988: Date
Description
Amount
1/25/88
Check 005 from AML's acct. 17764 at Premier Bk.
$ 15,000
1/27/88
Check 1295 from AML's acct. 17764 at Premier Bk.
15,000
5/09/88
Withdrawal from AML's acct. 1777-2 at Premier Bk.
1,000
6/03/88
Withdrawal from AML's acct. 1778-0 at Premier Bk.
2,500
7/18/88
Transfer from First Nat. Bk. of Kennedale
2,000
(First Nat.) (SH Inv)
7/19/88
Transfer from 1000603, First Nat. (SH Inv)
2,000
8/25/88
Transfer from 1000603, First Nat. (SH Inv)
22,000
8/29/88
Transfer from 1000603, First Nat. (SH Inv)
4,000
8/30/88
Check 44 from 1000603, First Nat. (SH Inv)
14,500
*451 Accordingly, since petitioner has not challenged the inclusion of these items in his income, we sustain respondent's determinations as to each of them. The only items discussed by petitioner in his post-trial brief are the following: Date
Description
Amount 1/20/88
Check 017 from AML's acct. 17764 at Premier Bk.
$ 5,000
2/01/88
Check 1306 from AML's acct. 17764 at Premier Bk.
1,000
2/03/88
Check 1310 from AML's acct. 17764 at Premier Bk.
3,200
2/15/88
Check 1340 from AML's acct. 17764 at Premier Bk.
7,500
11/09/88
Deposit from 20438, client tr. acct. at Premier Bk.
15,000
10/03/88
Petitioner's check payable to Fst. Nat. Bk.
8,900 of Kennendale
Petitioner argues that the notations found on AML's check Nos. 1306 ("petty cash"), 1310 (" SWMS"), and 1340 ("payroll"), together with his "unchallenged testimony", prove that petitioner used those funds to pay deductible business expenses. In the case of check No. 1306 in the amount of $ 1,000, petitioner testified that the check was cashed and used for petty cash. In the case of check No. 1310 in the amount of $ 3,200, petitioner testified that the notation "SWMS" means South Western Medical School. Petitioner *452 testified, in effect, that he took these funds from AML to purchase a cashier's check payable to South Western Medical School which was "involved in doing some research for us on the laser project." According to petitioner, he purchased a cashier's check: Because of the funds availability situation at the bank at that time. There was very limited amount of cash -- available funds in the bank. And we wanted to be sure the check cleared.
In the case of check No. 1340 in the amount $ 7,500, petitioner testified that he used this money from AML in order to purchase cashier's checks to pay employees. We are not satisfied that petitioner has met his burden of proving respondent's determination wrong as to any of these three items. In order to find for petitioner, we would have to credit petitioner's testimony about the nature of each of these checks. At trial, we observed petitioner, and we found his testimony to be vague, self-serving, and incredible. For example, even if AML had been undergoing financial difficulties, we do not understand why AML could not have obtained certified checks directly from the bank to pay employees, rather than issuing a check for $ 7,500 to petitioner *453 to obtain certified checks. The same is true of check No. 1310 in the amount of $ 3,200, which petitioner claims to have used to pay South Western Medical School. In any event, we are not bound to accept a taxpayer's uncontradicted testimony if we find it to be improbable, unreasonable, or questionable. Boyett v. Commissioner, 204 F.2d 205, 208 (5th Cir. 1953), affg. a Memorandum Opinion of this Court; Schad v. Commissioner, 87 T.C. 609, 620 (1986), affd. without published opinion 827 F.2d 774 (11th Cir. 1987); Gallucci v. Commissioner, T.C. Memo. 1992-435. The next items contested by petitioner are check No. 017 dated January 20, 1988, and the $ 15,000 deposit on November 7, 1988, to a client trust account maintained by petitioner's attorney. Respondent treated both of these items as income to petitioner. Petitioner's testimony concerning these items is as follows: Q Mr. Bellinger, the next check, please. Exhibit number, amount. A Exhibit C. Made out to myself in the amount of 5,000. Designated as fees. The countersigning on the back is, Pay to the order of *454 John Covington. * * * * Q Who is -- tell His Honor who John Covington is. A John is an attorney. Q You are aware of the fact that the Internal Revenue Service has disallowed approximately $ 21,000 of expenses that you paid to your lawyer, Mr. Covington? A That is correct. Q Please tell His Honor, in 1988, why were you paying Mr. Covington legal bills? A For representation in certain matters relating to not only this business, but also the other business ventures that I have been involved in. Q Well, let's be a little more specific. What type of business were you engaged in, which had created the litigation, which necessitated Mr. Covington's involvement? A The real estate ventures that I was involved in dating back to 1980. Q And, how were you involved in this litigation? As a plaintiff, defendant, or how? A Defendant. Q Were there any cross claims, counterclaims, etcetera? A Yes. Q All right. Fair statement that everybody is suing everybody else? A Correct. Q Okay. Who was the other -- who else was involved in that case? A Robert Walker. * * * * Q Okay. But it is a fair statement, these were paid to a lawyer to represent you in business litigation? A That is correct. *455 Q Okay. Did you have -- do you recall that you had any personal need for a lawyer, such as divorce, or buying a house, or selling a boat, or anything like that? A No. Q What is the next check? A Exhibit S. Q Okay. What is Exhibit S? A It is a deposit receipt into the GJB-JPC client trust account in the amount of 15,000. Q And is there anything on that check, any notation, or documentation which would allow you to tell His Honor the purpose for which that check was issued? A It was put into the John P. Covington client trust account. Q Again, that is the attorney? A Correct. Q And the date on that check is? A November 9, 1988. Q And is that -- does that check represent payment of fees to Mr. Covington to represent you in a matter you have already discussed with His Honor? A Fees related to matters, yes. Q Okay. Same as your prior testimony? A Correct.
We find nothing in the above testimony to prove that the $ 5,000 check and the $ 15,000 deposit are not income to petitioner, as determined by respondent. To the contrary, petitioner's testimony suggests that these items, totaling $ 20,000, were a part of the legal fees of $ 21,000 that petitioner had deducted on his *456 1988 return and that respondent disallowed in the notice of deficiency. Furthermore, we note that AML's check No. 017 in the amount of $ 5,000 was made payable to petitioner. The check was endorsed by petitioner and then also endorsed by Mr. John Covington, petitioner's attorney. If this check was in payment of Mr. Covington's legal services to AML, we do not understand why it was not drawn to Mr. Covington's order. The situation is the same with respect to the deposit of $ 15,000. As described above, the funds for this deposit came from a check in the amount $ 162,000 drawn by Key Financial Services, Inc., and made payable to AML. As described above, those funds were split into three client trust accounts maintained by Mr. Covington, and $ 15,000 was deposited into petitioner's client trust account. If any part of the $ 15,000 deposit was in payment of legal services provided by Mr. Covington to AML, we do not understand why such amount was not deposited into AML's custody account, rather than into petitioner's custody account. Therefore, we find that petitioner has failed to disprove respondent's determination that the subject items are included in petitioner's income for 1988, *457 and we hereby sustain respondent on that issue. Petitioner's principal contention with respect to AML's check No. 017 for $ 5,000 and the deposit to petitioner's client trust account in the amount of $ 15,000 is that such amounts are deductible under section 162. According to petitioner's testimony quoted above, these amounts were paid to his attorney, Mr. Covington, "for respresentation in certain matters relating to not only this business [i.e., AML], but also the other business ventures that I have been involved in." Petitioner describes "the other business ventures" as "real estate ventures * * * dating back to 1980" and states that he was involved in "business litigation" as a defendant and that another person, "Robert Walker", was also involved in the litigation. We sustain respondent's determination disallowing petitioner's deduction of legal fees in the amount of $ 21,000. Petitioner has failed to prove that respondent's determination is wrong. First, as mentioned above, we do not credit petitioner's testimony. Second, even if we believed petitioner, his testimony is too vague to establish that either the $ 5,000 check or the $ 15,000 deposit is deductible under section *458 162. In this connection, we note that, according to petitioner's testimony, the two payments were given to Mr. Covington for legal services provided to AML and other legal services provided to petitioner. However, there is nothing in the record to show the amount of the legal services provided in connection with petitioner's trade or business. Petitioner is not entitled to deduct legal fees paid in furtherance of AML's trade or business. See Deputy v. Dupont, 308 U.S. 488, 494 (1940); Leamy v. Commissioner, 85 T.C. 798, 808-809 (1985). Thus, because there is nothing in the record to allocate the legal fees between the portion attributable to AML's business and the portion attributable to petitioner's business, we find that petitioner has failed to meet his burden of proving entitlement to the deduction. Furthermore, even if the legal fees could be allocated, petitioner's testimony is too vague to establish that any part of the expenditures is an ordinary and necessary business expense. All we can tell from petitioner's testimony is that the legal fees were paid in connection with petitioner's defense of certain "business *459 litigation" involving petitioner's "real estate ventures * * * dating back to 1980." The nature of the litigation and the real estate ventures is not explained. We have no basis to judge the deductibility of the expenses. See generally United States v. Gilmore, 372 U.S. 39 (1963). Third, the testimony of petitioner's attorney, Mr. Covington, fails to substantiate petitioner's deduction of attorney's fees in the amount of $ 21,000. When asked if the deposit of $ 15,000 was in payment of legal services rendered for petitioner, Mr. Covington replied as follows: A Well, I wouldn't know if I performed legal fees with regard to this particular account, but I did an awful lot of work for them in 1988 and '89. And there for longer than a year, they provided an office over at their building, about a quarter of a floor where I was there 95 percent of the time. And I did a lot of legal work for them. A lot. Q And that was for Mr. Bellinger? A Well, it was for American Medical Laser, for Nutra-Meal, which originally was Whole Meal, then it was Total Meal, and then it was Nutra-Meal. Q But you did not provide any legal service for SH Investments? A Well, *460 I am assuming SH Investments has something to do with Steven Hibler, since that is his initials. And Steven Hibler, you know, he was one of the principals of the two companies, Nutra-Meal and AML. And I did as much or more work for him, at his direction, as I would Mr. Bellinger. So that -- I mean --
Furthermore, when asked why a check made out to AML was deposited into three different trust accounts, Mr. Covington responded: A What are you saying -- this particular check went into -- these -- Q Yes. A -- that is the source? No. I can't -- I couldn't explain that. As I say, the only purpose that I ever recognized was that they had to have a place to cash their checks, and so that is what I did.
Mr. Covington testified that he remembered "getting approximately $ 20,000 in fees from Gary right about that time." However, we note that Mr. Covington did not present records to substantiate his vague recollection that petitioner, as opposed to corporations with which he was affiliated, i.e., AML, Nutra Meal, Whole Meal, or Total Meal, paid legal fees of "approximately $ 20,000". Moreover, Mr. Covington was not asked to, and he did not, describe any of the legal services that *461 he allegedly provided to petitioner. Accordingly, petitioner has failed to sustain his burden of proving entitlement to a deduction for any of the legal fees disallowed by respondent. The last item to which petitioner objects involves a check which petitioner drew from his account at the First National Bank of Kennedale dated October 3, 1988, in the amount of $ 8,900. Petitioner's argument is as follows: Exhibit T is a check in the amount of $ 8,900 and is payable to the First National Bank of Kennedale. The notations "CC" and "Dr. Heard payment" are contained thereon. Taxpayer testified that the check was used to obtain a cashier's check in a like amount to reimburse Dr. Heard for lease payments he had made. The Taxpayer testified that the lease payments were in furtherance of the business of American Medical Laser.
If the purpose of the above argument is to reduce the amount of unreported income determined by respondent, it fails because respondent did not include the subject expenditure of $ 8,900 among the specific income items used to reconstruct petitioner's 1988 income. If the purpose of the above argument is to persuade the Court to allow a deduction under section *462 162 in the amount of $ 8,900, it fails because we do not credit petitioner's testimony concerning the nature of the expenditure and it is not otherwise substantiated. Addition to Tax for Negligence Under Section 6653 (a)
Respondent determined that petitioner is liable for an addition to tax for negligence pursuant to section 6653(a)(1). Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment, if any part of the underpayment for the year is due to a taxpayer's negligence or disregard of rules or regulations. For this purpose, the term "negligence" is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Hitchins v. Commissioner, 103 T.C. 711, 719 (1994). Petitioner bears the burden of proving that no part of the underpayment for 1988 was due to his negligence or disregard of rules or regulations. Rule 142(a); Axelrod v. Commissioner, 56 T.C. 248, 258-259 (1971). In this case, petitioner has made no attempt to prove that he exercised the requisite level of care. He presented no defense to respondent's determination *463 of negligence at trial or on brief. Accordingly, we find that petitioner has failed to meet his burden of proof on this issue and is liable for the addition to tax pursuant to section 6653(a). Addition to Tax Under Section 6661(a) --Substantial Understatement of Tax Liability
Respondent's notice of deficiency determined that petitioner is liable for the addition to tax under section 6661. Section 6661(a) provides that if there is a substantial understatement of income tax on a taxpayer's Federal income tax return, then there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. See generally Pallottini v. Commissioner, 90 T.C. 498, 503 (1988). For this purpose, the term "understatement" means the excess of the amount of tax required to be shown on the return for the taxable year over the amount of tax imposed which is shown on the return, reduced by any rebate. Sec. 6661(b)(2)(A). Generally, the amount of the understatement is reduced by the portion attributable to an item for which there is or was substantial authority for the taxpayer's treatment of the item, or an item *464 with respect to which the relevant facts are adequately disclosed on the return. Sec. 6661(b)(2)(B). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). The statute provides that the Secretary may waive all or part of the addition to tax if the taxpayer shows that there was reasonable cause for the understatement and that the taxpayer acted in good faith. Sec. 6661(c). In this case, as discussed above, we disagree with petitioner's position that there is no understatement with respect to his 1988 return. Petitioner did not otherwise take issue with respondent's determination that petitioner is liable for the addition to tax under section 6661(a). Accordingly, petitioner has not met his burden of disproving respondent's determination as to the addition to tax under section 6661(a), and we hereby sustain respondent as to that issue. To reflect the foregoing, Decision will be entered for respondent.