

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-26-1996

# United States v. Alston

Precedential or Non-Precedential:

Docket 94-2195

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"United States v. Alston" (1996). *1996 Decisions.* Paper 239.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/239

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

------------

No. 94-2195

------------

UNITED STATES OF AMERICA,


Appellee

v.

MICHAEL DAVID ALSTON,


Appellant

----------

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 93-cr-00445-1)

----------

Argued Monday, December 11, 1995[0]

BEFORE:  ROTH, McKEE and GARTH, Circuit Judges

----------

(Opinion filed February 26, 1996)

----------

Joel P. Trigiani (Argued)
1411 Walnut Street, Suite 700
Philadelphia, PA 19102

Attorney for Appellant

---

[0]This matter was originally heard on June 27, 1995 before Judges Hutchinson, Roth, and Garth.  Because Judge Hutchinson died prior to an opinion being rendered, the Panel was reconstituted to include Judge McKee, and the appeal was reargued.

Michael R. Stiles
United States Attorney
Walter S. Batty, Jr.
Assistant United States
Attorney, Chief of Appeals
Joel D. Goldstein (Argued)
Assistant United States Attorney
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street, Room 1250
Philadelphia, PA 19106-4476

Attorneys for Appellee

----------

OPINION OF THE COURT

----------

GARTH, Circuit Judge:

On September 30, 1993, defendant Michael David Alston ("Alston") was indicted on two counts. Count I charged him with conspiracy under 18 U.S.C. § 371: (i) to defraud the United States and the Treasury and (ii) to structure to avoid the reporting requirements of 31 U.S.C. § 5313(a), in violation of the anti-structuring provisions of 31 U.S.C. § 5324(a)(3) and § 5322. Count II charged him with structuring in violation of 31 U.S.C. § 5324(a)(3), § 5322(b); 31 C.F.R. § 103.11, § 103.22; and 18 U.S.C. § 2(b). Following a non-jury trial, Alston was convicted on both counts.

After Alston was convicted, the Supreme Court rendered its opinion in United States v. Ratzlaf, -- U.S. --, 114 S. Ct. 655 (1994), in which it held that, in order to obtain a structuring conviction, the government must prove that the

2

defendant "willfully" structured.  "Willfulness" was defined as
the defendant's knowledge that structuring was illegal.  The
government conceded that it had not proven the mens rea
(knowledge of illegality) that Ratzlaf required in order to
sustain Count II, the substantive count of structuring and that
portion of Count I that charged conspiracy to structure.  The
district court therefore vacated those portions of Alston's
conviction.  However, the district court refused to set aside
Alston's conviction under Count I which charged a § 371
conspiracy to defraud, reasoning that Ratzlaf's mens rea
requirement did not apply.

We have jurisdiction over this appeal pursuant to 28
U.S.C. § 1291.  We will reverse because the indictment, in
charging under the "defraud" clause of § 371, (Indictment ¶7(a)),
alleges no more than a conspiracy to defraud the United States by
structuring, a far different conspiracy than the genre of "Klein
conspiracies"[0] relied on by the government.  In addition, we have
such substantial difficulty in understanding how Alston can be
convicted of a conspiracy to defraud by structuring when he
cannot be guilty of a conspiracy to structure or of structuring
itself,[0] that we reverse Alston's conviction.

_____

[0]A "Klein conspiracy" is discussed at note 13, infra.
[0]In this opinion, we discuss only Alston's argument that his §371
conspiracy must be vacated, as we find no merit in Alston's other
ground for appeal, i.e., that the district court abused its
discretion in admitting evidence of Alston's failure to file tax
returns in 1987 and 1988.
    Alston had also originally raised a third ground for appeal:
that the district court had erred in enhancing his offense level
by two levels for obstruction of justice.  However, by letter
filed February 16, 1995, Alston abandoned this ground for appeal.

3

I.

On July 28, 1988, Alston, operator of an unprofitable convenience store, and his brother Henry each arranged to purchase top-of-the-line BMW automobiles from West German Motor Imports for approximately $70,000 apiece.[0]  The sales contract on each car provided that a down payment of $41,000 would be paid toward the purchase price of the car on or before the date of delivery, and that the remainder of the purchase price would be financed.  The salesman was co-defendant Richard Rosa.  Alston and his brother each left a personal check for $500 toward their respective down payments.

Alston's car became available on September 12, 1988. Alston made cash remittals to Motor Imports of $5,000 on September 30, 1988, $2,500 on October 4, 1988, and $1,500 on October 5, 1988, for a total of $9,000 within that week.  A single $10,000 cash payment would have triggered Motor Imports's obligation to file an IRS Form 8300 for cash payments over $10,000.[0]

---

[0]After factoring in all costs, each vehicle cost approximately $83,000.

[0]Internal Revenue Code section 6050I requires "[a]ny person . . . who is engaged in a trade or business, and who, in the course of such trade or business, receives more than $10,000 in cash in 1 transaction (or 2 or more related transactions)" to file a return identifying the person from whom the cash was received, the amount of the cash received, and the date and nature of the transaction.  26 U.S.C. § 6050I(a), (b).  Structuring transactions to evade the reporting requirements of § 6050I is prohibited.  26 U.S.C. § 6050I(f).

Because the statute of limitations for structuring under section 6050I had run, Alston was not charged with such a violation.

4

On October 5, 1988, Alston paid cash for a $9,000 money order payable to Motor Imports from Therese Drew, the head bank teller at Stenton Avenue Branch of Meridian Bank and a close personal friend of Alston's, who also kept the books for Alston's convenience store. At trial, Drew testified that she knew about the currency transaction report ("CTR") filing requirements imposed by law and had discussed the CTR filing requirements with Alston. On October 7, 1988, Alston purchased with cash another $8,000 money order payable to Motor Imports from the Stenton Avenue Branch of Meridian Bank.

A similar pattern was followed for the purchase of Henry Alston's BMW, and on December 9, 1988, both Michael and Henry Alston took delivery of their new cars.

On September 30, 1993, Alston was charged in two counts of a three count indictment. Count I charged Alston with conspiracy under 18 U.S.C. § 371: (i) to defraud the United States and the Treasury and (ii) to structure to avoid the reporting requirements of 31 U.S.C. § 5313(a),[0] in violation of the anti-structuring provisions of 31 U.S.C. § 5324(a)(3)[0] and

---

[0] In 1970, Congress enacted 31 U.S.C. § 5313(a), which provided that financial institutions such as banks are obligated to file CTR's for cash transactions in excess of $10,000. See 31 U.S.C. § 5313(a) (reporting requirement); 31 C.F.R. § 103.22(a)(1) ($10,000 floor).

[0] In 1986, Congress enacted an "antistructuring" provision, 31 U.S.C. § 5324, which provides that no person shall, "for the purpose of evading the reporting requirements of section 5313(a) . . . structure . . . any transaction with one or more financial institutions." 31 U.S.C. § 5324(a)(3).

§ 5322.[0]  Count II charged Alston with the substantive offense of structuring, that is, evasion of the reporting requirements of 31 U.S.C. § 5313(a), in violation of the anti-structuring provisions of 31 U.S.C. § 5324(a)(3), § 5322(b); 31 C.F.R. §103.11[0], § 103.22;[0]  and 18 U.S.C. § 2(b).[0]

---

[0] At all times relevant to this appeal, 31 U.S.C. § 5322(a) provided criminal penalties only for "willful" violations of § 5313 or 5324.  Prior to its amendment in 1994, § 5322 read as follows:

> A person willfully violating this subchapter [31 U.S.C. § 5311 et seq.] or a regulation prescribed under this subchapter (except section 5315 of this title or a regulation prescribed under section 5315) shall be fined not more than $250,000, or imprisoned for not more than five years, or both.

31 U.S.C. § 5322(a).  Section 5324 was subsequently amended in 1994 to provide its own penalty provision.  The 1994 amendment did not impose a "willfulness" requirement.  See n. 12, infra.

[0] Section 103.11(gg) of the C.F.R. defines "structuring" as follows:

> Structure (structuring).  [A] person structures a transaction if that person, acting alone, or in conjunction with, or on behalf of, other persons, conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements under section 103.22 of this part.  "In any manner" includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions, including transactions at or below $10,000.

31 C.F.R. § 103.11(gg).

[0] Section 103.22(a)(1) of the C.F.R. provides that "[e]ach financial institution other than a casino or the Postal Service shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such

On November 17, 1993, a non-jury trial was held. On November 18, 1993, Alston was convicted of all counts. The district court sustained Alston's conviction relying on the Third Circuit law in effect at that time. Our jurisprudence then provided that to obtain a structuring conviction, the government need only prove that the defendant knew of the financial institution's obligation to report financial transactions of over $10,000, and that the defendant structured his transactions in order to avoid triggering such reports. See United States v. Shirk, 981 F.2d 1382 (3d Cir. 1992), cert. denied, 114 S. Ct. 873 (1994). The district court concluded that Alston knew of the bank's reporting requirements from his conversations with Drew, and that he had intentionally structured his transactions to avoid having CTR's filed with the IRS.

On January 11, 1994, after the trial, but before the district court ruled on Alston's post-trial motions, the Supreme Court held that in order to obtain a structuring conviction the government must prove that the defendant knew that structuring itself was illegal. United States v. Ratzlaf, -- U.S. --, 114 S. Ct. 655 (1994).

Alston moved to set aside the verdict and sought the entry of a judgment of acquittal under Rule 29 of the Federal

financial institution which involves a transaction in currency of more than $10,000." 31 C.F.R. § 103.22(a)(1).
[0]Under 18 U.S.C. § 2(b), a person who causes an act to be done which if directly performed by himself would be an offense against the United States, is punishable as if he had committed the act himself. 18 U.S.C. § 2(b). In this case, Count II of the indictment charged Alston under § 2(b) with causing the bank to fail in its statutory duty to file CTR's.

7

Rules of Criminal Procedure.  The government conceded that it had not proven knowledge of illegality.  It therefore conceded that Alston's convictions for structuring and conspiracy to structure under § 5324 and § 5322 could not stand.

By order filed April 6, 1994, the district court granted Alston's post-trial motion to set aside the verdict with respect to the substantive count of structuring and so much of Count I that had charged conspiracy to structure (Indictment ¶ 7(b)).  The district court entered a judgment of acquittal on those charges.  The district court refused, however, to set aside Alston's conviction under that portion of Count I that had charged conspiracy to defraud, (Indictment ¶ 7(a)).  It did so on the ground that _Ratzlaf_'s _mens rea_ requirement did not apply to § 371 conspiracies to defraud.

On November 29, 1994, Alston was sentenced to a term of imprisonment of one year and one day for conspiracy to defraud the United States, as charged in Count I of the indictment.

## II.

Section 5313 of title 31 of the United States Code, and 31 C.F.R. § 103.22(a)(1) promulgated thereunder, provide that banks and other "financial institutions" must file CTR's for cash transactions of $10,000 or more.  In 1986, Congress enacted 31 U.S.C. § 5324 and § 5322 as part of the Anti-Drug Abuse Act of 1986.  Section 5324 provides that it is illegal for an individual to "structure," that is, to conduct one or more cash transactions at one or more financial institutions, for purposes of evading

8

the financial institution's reporting requirements under 31 C.F.R. § 103.22. Structuring includes reducing a sum of cash exceeding $10,000 into smaller sums. Because, prior to 1994, section 5324 did not itself contain a penalty provision, its penalty provision was supplied by section 5322(a), which provided that "a person willfully violating" section 5324 was subject to criminal penalties.

We originally interpreted the term "willful" in § 5322(a) to mean knowledge of the bank's reporting requirements under § 5313 coupled with the intent to evade those requirements. United States v. Shirk, 981 F.2d 1382, 1390-92 (3d Cir. 1992). However, in Ratzlaf v. United States, -- U.S. --, 114 S. Ct. 655 (1994), the Supreme Court held that the term "willful" in § 5322(a) required proof beyond knowledge of a bank's reporting duties and intent to evade them. Ratzlaf for the first time required that the government prove that the defendant "knew the structuring in which he engaged was unlawful." Ratzlaf, -- U.S. at --, 114 S. Ct. at 663 (emphasis added). Thus, at all times relevant to this appeal, structuring was one of the few crimes for which the government had to prove knowledge of illegality. See United States v. Zehrbach, 47 F.3d 1252, 1261 (3d Cir. 1995), cert. denied, 115 S. Ct. 1699 (1995).[0]

---

[0]After the Supreme Court decided Ratzlaf, Congress eliminated the willfulness requirement for structuring convictions by amending 18 U.S.C. § 5324 to contain its own criminal penalty provision. The penalty provision of § 5324, unlike § 5322, does not require willfulness. 1994 Riegle Community Development and Regulation Improvement Act, Pub. L. No. 103-325, § 411, 108 Stat. 2253 (1994). Thus, following the 1994 amendment, the mens rea requirement for a structuring conviction is met if the government

As earlier noted, the government conceded following trial that it had failed to prove that Alston knew it was illegal to avoid CTR's, and agreed that Alston's convictions for the substantive offense of structuring and conspiracy to structure should be vacated. However, the government maintained that Alston's structuring may nonetheless be punished as the object of a "Klein conspiracy"[10] under the "defraud" clause of 18 U.S.C. § 371. The district court agreed and declined to vacate the charge against Alston for conspiracy to defraud the United States under § 371.

## III.

Section 371, the general federal conspiracy statute, provides as follows:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any matter for any purpose, and one or more of such persons do any act to effect the object of the conspiracy each shall be [subject to criminal penalties].

---

merely establishes that the defendant had the purpose of causing a financial institution to not file a required report.

In light of the 1994 amendment to § 5324, we observe that the instant situation is unlikely to occur again.

[10]The term "Klein conspiracy" comes from the Second Circuit case of United States v. Klein, 247 F.2d 908 (2d Cir. 1957), and has become the generic term for a conspiracy to frustrate the government (particularly the IRS) in its lawful information gathering functions. See, e.g. United States v. Montalvo, 820 F.2d 686 (5th Cir. 1987) (defendant convicted under the defraud clause of § 371 for conspiracy to impede the IRS in the ascertainment and collection of revenue by laundering money in order to disguise the true source of United States currency).

18 U.S.C. § 371.  Section 371 refers to two types of conspiracies: (1) conspiracy to commit a substantive offense proscribed by another statute (the ""offense" clause"); and (2) conspiracy to defraud the United States (the ""defraud" clause"). See United States v. Vazquez, 319 F.2d 381, 384 (3d Cir. 1963). While the "offense" clause requires reference to another part of the criminal code, the "defraud" clause does not, simply because the substantive offense (fraud) is contained in the statute itself.

It is well settled that to convict a defendant of conspiracy under the "offense" clause, the government must prove whatever level of mens rea is required for conviction of the underlying substantive offense.  The Supreme Court has made clear that "in order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute [under the "offense" clause of § 371], the Government must prove at least the degree of criminal intent necessary for the substantive offense itself." United States v. Feola, 420 U.S. 671, 685–86 (1975) (citing Anderson v. United States, 417 U.S. 211, 226 (1974)).[0]

In order to convict a pre–1994 structuring defendant, the government must prove "willful" violation of the anti–structuring statute, that is, knowledge of the illegality of structuring, Ratzlaf v. United States, –– U.S. ––, 114 S. Ct. 655 (1994).  A pre–1994 conspiracy to structure must also be

---

[0]As Justice Jackson once stated, conspiracy, "chameleon–like, takes on a special coloration from each of the many independent offenses on which it may be overlaid." Krulewitch v. United States, 336 U.S. 440, 447 (1940).

dismissed absent a showing of a "willful" violation.  Thus, "it is necessary to establish knowledge of the illegality of structuring in order to convict a defendant for conspiracy to structure financial transactions."  United States v. Kim, 65 F.3d 123, 126 (9th Cir. 1995) (reversing conviction for conspiracy to structure where the jury was not instructed to find that the defendant had knowledge of the illegality of structuring).  It was obviously for these reasons that the district court in the instant pre-1994 case dismissed the substantive charge of structuring as well as the charge of § 371 conspiracy to structure.

After the district court dismissed all but the charge of § 371 conspiracy to defraud, of which Alston was convicted, the issue then remaining before us was whether Alston, in light of Ratzlaf's pre-1994 standard of willfulness -- a standard since amended (see footnote 12, supra) -- could be convicted of a conspiracy to defraud by structuring without proof of knowledge of illegality.  In United States v. Curran, 20 F.3d 560 (3d Cir. 1994), we answered that question in connection with the Federal Election Campaign Act.  We held that the standard that applied to the substantive offense also applied to § 371 conspiracy to defraud.  Here, we answer that question consistent with Curran's principle and holding and require that a conviction to defraud the United States by pre-1994 structuring must also be supported by proof that the defendant knew that structuring was illegal.[o]

---

[o] Judge Roth, writing in dissent (dissent typescript page 24) claims that we have misread United States v. Curran, 20 F.3d 560

12

The defendant in Curran had asked his employees to make individual contributions to the election campaigns of certain candidates for federal office. He then reimbursed them in cash, thereby circumventing the maximum campaign contributions permitted to any individual under federal law. Following trial, Curran was convicted on charges of causing election campaign treasurers to submit false reports to the Federal Election Commission (the "FEC"), in violation of 18 U.S.C. § 2(b) and § 1001,[0] and of conspiracy to defraud the United States under § 371.

Like the antistructuring statutes, § 1001 punishes only "willful" conduct. We held that "willfully" causing a violation of the disclosure obligations under the Federal Campaign Act, was no different than "willfully" causing the failure by a bank to

---

(3d Cir. 1994). She charges that our reading of Curran would lead to a conflict with United States v. Vasquez, 319 F.2d 381 (3d Cir. 1963).
    Vasquez, however, said no more than: "[t]he latter conspiracy [to defraud the United States] is itself the substantive offense, and a count of an indictment drawn under it need refer to no other statute than § 371" -- a statement to which we have referred in text, supra, at page 11.
    Curran, therefore, cannot conflict with Vasquez: first, because the Vasquez statement is dicta and second, because each of the two cases deals with vastly different subject matters and with vastly different principles. Hence, neither Vasquez nor any other authority cited by the dissent trenches upon the principle that where the Supreme Court or Congress has identified and specifically considered particular conduct and has ruled specifically with respect to that conduct, as the Supreme Court has ruled in Ratzlaf, effect must be given to the ruling and standard prescribed not only for the specific offense but also for the conspiracy to commit that offense.
[0]Section 1001 prohibits the making of a false statement or the concealment of a material fact within the jurisdiction of a department or agency of the United States. 18 U.S.C. § 1001.

13

file a CTR under the Bank Secrecy Act. Curran, 20 F.3d at 568-69. Thus, applying Ratzlaf, we defined "willfulness" in cases brought under § 2(b) and § 1001 in the Federal Election law context to require the prosecution to prove "that defendant knew of the treasurers's reporting obligations, that he attempted to frustrate those obligations, and that he knew his conduct was unlawful." Curran, 20 F.3d at 569.

Because the Curran court's "willfulness" instruction was legally deficient in that it did not charge the jury that Curran had to have knowledge of the illegality of his actions, we vacated Curran's convictions on the substantive counts, 18 U.S.C. § 2(b) and 18 U.S.C. § 1001. Most significantly, however, we vacated Curran's § 371 "conspiracy to defraud" conviction because critical aspects of Curran's mens rea were lacking, including proof that he knew his actions to be illegal. We held that the district court's misstatement of the legal standard for "willfulness" "undermined not only the substantive counts, but the conspiracy [to defraud] one as well. The essence of conspiracy is an agreement to commit an act that is illegal." Curran, 20 F.3d at 571. "The comments we have previously made about the failings of the instruction on intent apply to the conspiracy [to defraud] count as well." Id. "On retrial, the instruction on intent as to the conspiracy count must track those applicable to the substantive counts." Id. (quoting United States v. American Investors of Pittsburgh, Inc., 879 F.2d 1087, 1100 (3d Cir.), cert. denied, 493 U.S. 955 (1989)).

14

Both logic and our decision in <u>Curran</u> dictate our holding here. The government in this case has conceded that it has failed to prove that Alston "willfully" structured under <u>Ratzlaf</u>. Therefore, the charge against Alston for conspiracy to defraud, which was premised exclusively on Alston's structuring activity, must be vacated for failure to prove the <u>mens</u> <u>rea</u> (knowledge of illegality) required not only by the underlying substantive offense of structuring, but also by the conspiracy to defraud by structuring.

In the present case, the indictment, in charging Alston with conspiracy to defraud, relied exclusively on allegations of his structuring activity. The indictment reads in relevant part:

> From on or about July 28, 1988 to on or about December 9, 1988 in the Eastern District of Pennsylvania, defendants
>
> MICHAEL DAVID ALSTON, and
> RICHARD ROSA
>
> did knowingly, willfully and unlawfully conspire, combine, confederate, and agree together with an unindicted co-conspirator, and others unknown to the grand jury:
>
>     a. <u>to defraud the United States and the Department of the Treasury, an agency of the United States, by impairing, obstructing, and defeating its lawful governmental function of collecting data and reports of currency transactions in excess of $10,000</u>; and
>
>     b. to knowingly and willfully structure, and attempt, aid, abet and cause the structuring of, financial transactions with a domestic financial institution for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a), in violation of 31 U.S.C. § 5324(a)(3).

15

> "Structuring" entails the breaking down
> of large amounts of U.S. currency into
> smaller amounts of less than $10,000
> preliminary to transacting business with a
> financial institution in an attempt to avoid
> the CTR reporting requirements.

Indictment ¶ 7 (emphasis added).

The indictment, in charging conspiracy to defraud, asserts only that Alston impaired the United States and Treasury "in its lawful governmental function of collecting data and reports of currency transactions in excess of $10,000," language that sounds in structuring. Indeed, the entire indictment speaks only to structuring activities and contains no allegations that Alston defrauded the government in any other respect. Because the indictment is narrowly drawn to rest solely on the alleged facts of structuring, and because it is conceded that Alston lacked the requisite mental state to be guilty of structuring, Alston's conviction on unspecified broader grounds cannot be sustained. See United States v. Murphy, 809 F.2d 1427, 1432 (9th Cir. 1987) (where indictment was narrowly drawn to state that defendants conspired to defraud the IRS in its collection of information with regard to currency transactions, the defendant could not be convicted of conspiracy to defraud based on his money laundering operations).

Moreover, the government has conceded that its theory against Alston for fraud against the United States is nothing more than structuring. See Gov't Supp. Mem, June 30, 1995 at 2 ("[T]he basis for our definition of the underlying legal obligation/legal prohibition to make out a case of an agreement

16

to defraud the government is found at 31 U.S.C. § 5324(a)(3).").
As a consequence, the government offered the same body of
evidence at trial to support both the charge against Alston for
"conspiracy to defraud" and the charge against him for
"conspiracy to structure."  The government neither charged, nor
attempted to prove at trial, that Alston engaged in any
fraudulent activity separate from, or in addition to, what can
only be characterized as "structuring."

Despite this concession and the proof at trial, and
even though the only charges found in the indictment describe the
act of structuring, the government argues that Alston's
"conspiracy to defraud" conviction did not require proof of the
"willfulness" required for a structuring conviction.  The
government contends instead that Alston was guilty of
participating in a so-called "Klein conspiracy" "to defraud the
United States by obstructing or impeding the IRS in its functions
and duties under the Bank Secrecy Act to collect analyze, and
disseminate information contained in CTR reports."  (Appellee's
Brief at 11).[0]  Because establishing a true Klein conspiracy

_____

[0]As previously explained, supra at 10 n.13, the term "Klein
conspiracy" is derived from United States v. Klein, 247 F.2d 908
(2d Cir. 1957), cert. denied, 355 U.S. 924 (1958).  A Klein
conspiracy is comprised of three elements: "(1) the existence of
an agreement, (2) an overt act by one of the conspirators in
furtherance of the [agreement's] objectives, and (3) an intent on
the part of the conspirators to agree, as well as to defraud the
United States."  United States v. Shoup, 608 F.2d 950, 956 (3d
Cir. 1979).  Several courts have sustained Klein convictions when
the evidence sufficed to prove an accompanying "intent and
purpose of impeding and obstructing the IRS in the collection of
revenue and the performance of its duties."  U.S. v. Vogt, 910
F.2d 1184, 1203 (4th Cir. 1990), cert. denied, 498 U.S. 1083
(1991).  See United States v. Montalvo, 820 F.2d 686, 690 (5th

17

under the "defraud" clause does not generally require proof of knowledge of illegality, the government contends that its proof that Alston knew of the bank's CTR filing requirements is a sufficient showing of mens rea to sustain his conviction for conspiracy to defraud.

We cannot discern any difference between the government's "defraud" scenario and the "structuring" scenario of which Alston was acquitted. Both conspiracies involve structuring prior to the 1994 amendment to § 5324. Therefore, given the indictment and the proofs at trial, we conclude that to obtain a conviction under either the "defraud" or "offense" clause of § 371, the government had to prove that Alston knew that his structuring activities were illegal. See Ratzlaf, supra. Although we do not foreclose the possibility of convicting a defendant under § 371's "defraud" clause based on charges in addition to or different from pre-1994 acts of structuring, as we have just discussed, the present indictment, under paragraph 7(a), charged no more or less than a straight-out structuring conspiracy.

Notably, the cases that have upheld convictions for conspiracy to defraud under § 371 have all involved additional charges in the indictment and additional evidence produced at trial, over and beyond that required for a conviction for pre-1994 structuring. For instance, in United States v. Jackson, 33 F.3d 866 (7th Cir. 1994), cert. denied, 115 S. Ct. 1316 (1995),

_____

Cir. 1987); United States v. Browning, 723 F.2d 1544 (11th Cir. 1984).

18

the Seventh Circuit affirmed the defendants' convictions for conspiracy to defraud under § 371 despite reversing their antistructuring convictions.

In Jackson, however, the indictment, in charging the § 371 "defraud" count, "never mentions a structuring violation or the relevant antistructuring statutes." Id. at 870. Furthermore, Jackson involved extensive "other evidence" beyond structuring activity demonstrating a conspiracy to defraud the United States, id. at 868, including record evidence that the defendants had no wage or other income, id. at 869, and yet had spent over $300,000 to purchase homes and exotic automobiles. Id. at 869.

Because, in the present case, the charge against Alston for "conspiracy to defraud" was nothing more than a charge of conspiracy to structure, we will reverse Alston's conviction where his conviction was not based on proof that he had "willfully" structured, as required under Ratzlaf. Where either Congress or the Supreme Court has spoken on the required level of mens rea required to obtain a conviction for structuring, the government may not subvert that mandate by juggling the "defraud" and "offense" clauses of § 371 so as to substitute one for the other.

If the "offense" clause of § 371 specifically covers an act or offense and the indictment charges only that act or offense as having been committed, and the proofs at trial reveal no more than such acts of offense, a defendant not guilty under the "offense" clause cannot alternatively be convicted under the broad "defraud" clause of § 371.

19

IV.

Because the indictment here charged no more than a conspiracy to defraud the United States by structuring and the proofs at trial established no more than a conspiracy to defraud the United States by structuring, we will reverse Alston's conviction.

ALSTON
94-2195

Roth, Circuit Judge: Dissenting

Appellant Michael David Alston appeals his conviction of conspiracy to defraud the United States and the Department of the Treasury in violation of 18 U.S.C. § 371. The district court found that Alston engaged in a Klein conspiracy with the intent to "impair, obstruct and defeat the lawful government function of collecting data and reports of currency transactions" by

20

arranging his bank transactions to avoid the reporting requirements of 31 U.S.C. § 5313(a) and 31 C.F.R. § 103.22(a)(1). United States v. Alston, Crim. No. 93-445-1 at 11 (Apr. 6, 1994); Appellant's App. at 41. Because I believe that the evidence is sufficient to support a conviction for violation of 18 U.S.C. §371, I would affirm the district court. Therefore, I dissent.

The majority believes that because the conviction for conspiracy to defraud the United States is "premised exclusively on Alston's structuring activity," the government must demonstrate the same mens rea for a conviction under 18 U.S.C. §371 as is necessary for a conviction under 31 U.S.C. § 5322. Majority Op. at ___ [slip op. at 15]. I disagree.

Section 5322 requires that a defendant "willfully" commit a violation. The Supreme Court has interpreted this "willfulness" requirement to mean that a defendant who intentionally commits unlawful acts must also have known that his actions were unlawful. Ratzlaf v. United States, ___ U.S. ___, 114 S.Ct. 655, 657, 663 (1994). Section 371, in contrast, imposes no such "willfulness" requirement, and we should not create one. As we stated in United States v. Vazquez, a § 371 conspiracy to defraud "is itself a substantive offense, and a count of an indictment drawn under it need refer to no other statute than § 371." 319 F.2d 381, 384 (3d Cir. 1963). Thus there is no logical reason to apply the willfulness requirement contained in § 5322 when § 371 encompasses the entire statutory charge against Alston.

21

The government, having failed to prove the requisite
_mens_ _rea_ for conviction under one statute, 31 U.S.C. § 5322, has
obtained a conviction under another more general statute, 18
U.S.C. § 371.  Section 371 requires only a showing that Alston
intentionally committed unlawful acts -- not a showing that he
knew his actions to be unlawful.  The fact that the two charges
are premised on the same factual scenario is of no legal
significance in this case.  There is nothing unusual or improper
in the government's alternative characterization of the same
facts, so long as both theories are alleged in the indictment, as
they were here.  Indictment, Count I at ¶ 7(a)-(b); App. at 12a;
_Id._ at Count II, ¶ 2; App. at 17a.

## I

Alston was originally convicted on two counts of a
three count indictment.  Count I charged Alston in two subparts
with conspiracy to defraud the United States and the Department
of the Treasury in violation of 18 U.S.C. § 371 and with
conspiracy to structure for the purpose of evading the reporting
requirements of 31 U.S.C. § 5313(a).[0]  _Alston_, Crim. No. 93-445-1

---

[0] Count I reads in pertinent part:

> 7.  From on or about July 28, 1988 to on or about
> December 9, 1988 in the Eastern District of
> Pennsylvania, defendants
>
> MICHAEL DAVID ALSTON, and
> RICHARD ROSA
>
> did knowingly, willfully and unlawfully conspire,
> combine, confederate, and agree together with an
> unindicted co-conspirator, and others unknown to the
> grand jury:

22

at 1; Appellant's App. at 31; Indictment, Count I at ¶7(a)-(b); App. at 12a. Count II charged Alston with "structuring" a financial transaction in violation of 31 U.S.C. §5324(a)(3). Alston, Crim. No. 93-445-1 at 1; Appellant's App. at 31; Indictment, Count II at ¶ 2; App. at 17a.

The structuring and conspiracy to structure charges were prosecuted pursuant to 31 U.S.C. § 5322, which provided that defendants must be convicted of "willfully violating" the anti-structuring laws.[⁰] At the time of Alston's indictment and trial, we interpreted the "willfulness" mens rea requirement in §5322 to mean that a defendant had to have "knowledge of the legal reporting requirements and the intent to prevent the bank from furnishing the required information." United States v. Shirk, 981 F.2d 1382, 1391-92 (3d Cir. 1992) (footnote omitted), vacated, ___ U.S. ___, 114 S.Ct. 873 (1994) (citing Ratzlaf v. United

---

> a. to defraud the United States and the Department of the Treasury, an agency of the United States, by impairing, obstructing, and defeating its lawful governmental function of collecting data and reports of currency transactions in excess of $10,000 . . ..
>
> b. to knowingly and willfully structure, and attempt, aid, abet and cause the structuring of, financial transactions with a domestic financial institution for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a), in violation of 31 U.S.C. § 5324(a)(3).

Indictment, Count I at ¶ 7; App. at 12a.
[⁰] Section 5324 has since been amended to add a criminal penalty provision so that a prosecution can now be brought directly under that statute without reference to § 5322. See United States v. Zehrbach, 47 F.3d 1252, 1262 n.7 (3d Cir. 1995) (citing 1994 Riegle Community Development and Regulation Improvement Act, Pub.L. No. 103-325, § 411, 108 Stat. 2253 (1994)).

States.  ___ U.S. ___, 114 S.Ct. 655 (1994)).  The government did not have to prove that the defendant knew that he was violating the law by structuring his transactions.

After the conclusion of Alston's bench trial, the Supreme Court decided Ratzlaf v. United States.  ___ U.S. ___, 114 S.Ct. 655 (1994).  Ratzlaf interpreted the word "willfully" as it then appeared in 31 U.S.C. § 5322 to require that the government show not only that a defendant intended to circumvent a bank's obligation to report currency transactions but that the defendant knew that his efforts to circumvent those requirements were unlawful.  Id. at 657, 663.  In light of Ratzlaf, Alston filed post-trial motions to set aside his convictions.  The district court, with the government's acquiescence, vacated the structuring charge in Count II and the conspiracy to structure charge in Count I and acquitted Alston of these crimes.

Despite Ratzlaf, the district court affirmed Alston's conviction for conspiracy to defraud the United States and the Treasury Department in violation of 18 U.S.C. § 371.  The court held that Alston was "a co-conspirator in a scheme to prevent the United States from receiving information to which it is entitled when a bank files a CTR . . .."  Alston, Crim. No. 93-445-1 at 14; Appellant's App. at 44.  The court distinguished Ratzlaf "on the basis that its analysis of the willfulness element centers on the use of the term 'willfully' in the antistructuring statute found at 31 U.S.C. §§ 5322(b) and 5324(a)(3)."  Id.[0]  Because

---

[0] As the majority notes, 31 U.S.C. § 5322 imposed criminal penalties only for "willful" violations of §§ 5313 or 5324 at all

§371 does not contain an analogous willfulness element, the court did not require proof that Alston knew that his actions were unlawful.

The district court's analysis is clearly correct. At the time Alston was charged and convicted, the relevant portion of § 371 provided as follows:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any matter for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 371. In United States v. Vazquez, we explained that this general conspiracy statute

> condemns two types of conspiracies: One, to commit substantive offenses against the United States specified under other statutes. The other to defraud the United States. The latter conspiracy is itself the substantive offense, and a count of an indictment drawn under it need refer to no other statute than § 371.

319 F.2d at 384 (emphasis added) (citing Glasser v. United States, 315 U.S. 60, 67 (1942)); see also United States v. Jackson, 33 F.3d 866, 870 (7th Cir. 1994) (citing United States v. Caldwell, 989 F.2d 1056, 1059 (9th Cir. 1993); United States

---

times relevant to this appeal. Prior to its amendment in 1994, §5322 read as follows:

> A person willfully violating this subchapter [31 U.S.C. § 5311 et seq.] or a regulation prescribed under this subchapter (except section 5315 of this title or a regulation prescribed under section 5315) shall be fined not more than $250,000, or imprisoned for not more than five years, or both.

31 U.S.C. § 5322(a).

25

v. Bucey, 876 F.2d 1297, 1312 (7th Cir. 1989), cert. denied, 493 U.S. 1004 (1989); United States v. Rosengarten, 857 F.2d 76, 78 (2d Cir. 1988), cert. denied, 488 U.S. 1011, (1989)); United States v. Vogt, 910 F.2d 1184, 1200 (3d Cir. 1990), cert. denied, 498 U.S. 1083 (1991).

Section 371 "reaches 'any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government.'" Dennis v. United States, 384 U.S. 855, 861 (1966) (citations omitted). Klein conspiracies, for example, may be prosecuted under the "defraud" clause of § 371. See United States v. Tarnopol, 561 F.2d 466, 474-75 (3d Cir. 1977) (acquitting defendants of Klein conspiracy because there was no basis for jury finding of intent "to impede and obstruct the functions of the Internal Revenue Service"); United States v. Klein, 247 F.2d 908 (2d Cir. 1957), cert. denied, 355 U.S. 924 (1958), and cert. denied sub nom., Haas v. United States, 355 U.S. 924 (1958), and cert. denied sub nom., Alprin v. United States, 355 U.S. 924 (1958); see also United States v. Derezinski, 945 F.2d 1006, 1010 (8th Cir. 1991); United States v. Farm & Home Savings Assoc., 932 F.2d 1256, 1260 (8th Cir. 1991), cert. denied sub nom., Meyer v. United States, 502 U.S. 860 (1991), and cert. denied sub nom., Williams v. United States, 502 U.S. 860 (1991); United States v. Cambara, 902 F.2d 144, 145-47 (1st Cir. 1990).

Klein conspiracies are conspiracies to defraud the United States by obstructing or impeding the Internal Revenue Service in the collection of taxes or in its lawful functions and

26

duties to collect, analyze, and disseminate information contained in CTRs. <u>Derezinski</u>, 945 F.2d at 1010; <u>Farm & Home Savings Assoc.</u>, 932 F.2d at 1260; <u>Cambara</u>, 902 F.2d at 145-47. A <u>Klein</u> conspiracy consists of three elements: "(1) the existence of an agreement, (2) an overt act by one of the conspirators in furtherance of the [agreement's] objectives, and (3) an intent on the part of the conspirators to agree, as well as to defraud the United States." <u>United States v. Shoup</u>, 608 F.2d 950, 956 (3d Cir. 1979). Knowledge of illegality is not an element of a <u>Klein</u> conspiracy. As the majority concedes, a conviction under the "defraud" clause of 18 U.S.C. § 371 requires a lesser showing of intent than does a conviction under 31 U.S.C. § 5322. Majority Op. at ___ [slip op. at 17-18] ("establishing a true <u>Klein</u> conspiracy under the 'defraud' clause does not generally require proof of knowledge of illegality . . ..").

The district court convicted Alston of a <u>Klein</u> conspiracy based upon several transactions conducted by or on behalf of Alston between October 5 and October 7, 1988. On October 5, Alston purchased from Meridian Bank a $9,000 money order payable to West German Motor Imports to be used toward the purchase of a new BMW. On October 6, 1988, Alston had co-conspirator Rosa purchase from Provident National Bank a $6,000 cashiers check payable to West German. The following day, October 7, 1988, Alston purchased with cash an $8,000 money order payable to West German from Meridian Bank. That same day, Alston purchased a second money order at Meridian Bank for $6,500 with a cash advance from a credit card. All of these negotiable

27

instruments were delivered to West German and credited toward Alston's purchase of the BMW.[0]

Alston conducted three of these four transactions through Terese Drew, a bank teller at Meridian Bank. Drew, who became head teller at Meridian in 1986 or 1987, described herself as a "very close friend" of Alston. Drew knew about the CTR reporting requirements imposed by law. The district court concluded that Drew discussed the CTR requirements with Alston some time before the events that led to the indictment. The court discounted Drew's statement that she did not believe that Alston knew of the CTR requirements because "it appeared to be part of her attempt to protect the defendant and it was asking her to speculate as to the defendant's state of mind." Alston, Crim. No. 93-445-1 at 10 n.5; Appellant's App. at 40.

Furthermore, the parties stipulated that Alston failed to file income tax returns for the calendar years 1987 and 1988. Based upon this evidence, the district court concluded that Alston arranged his transactions because "he did not want his name called to the attention of the Internal Revenue Service as someone who was financially capable of making large cash payments but nevertheless had failed to file income tax returns." Id. at 11; Appellant's App. at 41.

---

[0] Alston presumably paid West German in negotiable instruments in order to avoid triggering West German's duty to file an IRS Form 8300 reporting a series of cash transactions in excess of $10,000. No criminal indictment was brought for failure to file 8300 forms because the applicable three year statute of limitations for this offense had already run.

28

The district court summarized its understanding of these facts as follows:

> The circumstantial evidence presented at trial shows that the overt acts were done willfully and resulted in the bank failing to file CTRs because the transactions occurred on separate days and at separate banks in amounts less than $10,000 and were done with the purpose of preventing CTRs from being filed.

Id. at 14; Appellant's App. at 44. Thus the district court found all three elements necessary for conviction of a Klein conspiracy under 18 U.S.C. § 371: (1) an agreement between Alston and Rosa, (2) "overt acts" in furtherance of that agreement, and (3) an intent to defraud the United States of the CTRs to which it was entitled under 31 U.S.C. § 5313(a) and 31 C.F.R. § 103.22(a)(1).

Alston possessed the requisite mens rea for a § 371 conviction because these overt acts were done "with the purpose of preventing CTRs from being filed." No other mens rea is necessary for conviction. As the majority itself acknowledges, "[s]everal courts have sustained Klein convictions when the evidence sufficed to prove an accompanying 'intent and purpose of impeding and obstructing the IRS in the collection of revenue and the performance of its duties.'" Majority Op. at ___ [slip op. at 18 n.16] (citing United States v. Vogt, 910 F.2d at 1203; United States v. Montalvo, 820 F.2d 686, 690 (5th Cir. 1987); United States v. Browning, 723 F.2d 1544 (11th Cir. 1984)).

Ratzlaf is inapposite because it discusses a different statute with a different mens rea requirement. The Supreme Court stressed in Ratzlaf itself that it did not discard "the venerable principle that ignorance of the law generally is no defense to a

29

criminal charge." Ratzlaf, 114 S.Ct. 655, 663 (1994). The Court simply made an exception in one instance pursuant to a specific decree from Congress. Id. Because there is no "willfulness" requirement in § 371, Ratzlaf does not apply, and the government is not required to prove that Alston knew that his actions were illegal. The majority should not graft an additional mens rea requirement onto § 371 when it is warranted by neither the words of the statute nor Supreme Court precedent.

**II**

To understand how the majority came to impose this additional mens rea requirement on a § 371 conspiracy to defraud case, it is helpful to examine the majority's general approach to the issue. The majority reverses Alston's conviction for conspiracy to defraud the United States because it has "substantial difficulty in understanding how Alston can be convicted of a conspiracy to defraud by structuring when he cannot be guilty of a conspiracy to structure or of structuring itself . . .." Majority Op. at ___ [slip op. at 3-4] (footnote omitted). The majority never lays the facts of this case and the elements of a Klein conspiracy side by side to determine whether the facts satisfy the elements necessary for conviction under 18 U.S.C. § 371.⁰ Instead, the majority emphasizes the similarity between the factual scenario supporting the structuring and conspiracy to structure charges and the factual scenario

---

⁰ When the majority does address the government's Klein conspiracy theory, it does so in a perfunctory manner, dismissing it as "a far different conspiracy" than the one alleged in the indictment. Majority Op. at ___ [slip op. at 3].

30

supporting the conspiracy to defraud charge -- a consideration that I believe is irrelevant.

The majority opinion proceeds along two closely linked lines of reasoning.  First, the majority identifies a perceived deficiency in the indictment.  According to the majority, the indictment does not adequately allege a <u>Klein</u> conspiracy independently of the structuring and conspiracy to structure charges.  <u>See</u> Majority Op. at ___ [slip op. at 3]; <u>see also</u> <u>Id.</u> at ___ [slip op. at 16].  Second, the majority argues that Alston cannot be convicted of a conspiracy to defraud the United States based upon the same factual scenario used to support the unsuccessful structuring and conspiracy to structure charges. Majority Op. at ___ [slip op. at 3-4, 15, 17-20].  I will address these contentions in turn.

### The Indictment

Count I of the indictment clearly indicates the government's intention to seek a conviction of Alston under 18 U.S.C. § 371.  The language in the indictment mirrors relevant statutory and judicial pronouncements on § 371 and <u>Klein</u> conspiracies.  The indictment alleges in pertinent part that

Alston and Rosa conspired
        a.   to defraud the United States and the Department of
        the Treasury, an agency of the United States, by
        impairing, obstructing, and defeating its lawful
        governmental function of collecting data and reports of
        currency transactions in excess of $10,000 . . ..

Indictment, Count I at ¶ 7(a); App. at 12a.

Section 371 penalizes individuals who "conspire . . . to defraud the United States, or any agency thereof . . .."  18

31

U.S.C. § 371. In <u>Dennis v. United States</u>, the Supreme Court elaborated on this statutory language, noting that § 371 covers not only fraud but any conspiracy for the purpose of "impairing, obstructing, or defeating the lawful function of any department of government . . .." 384 U.S. at 861 (citations omitted). The language of paragraph 7(a) of the indictment closely tracks the language of § 371 and <u>Dennis</u>. It is therefore clear that the government intended to charge Alston with a violation of § 371 for obstructing lawful governmental functions.

A <u>Klein</u> conspiracy, which may be prosecuted under §371, is a conspiracy "to interfere with or obstruct one of [the government's] lawful governmental functions . . .." <u>Klein</u>, 247 F.2d at 916. Obstruction of lawful government functions is exactly what was alleged in paragraph 7(a) of the Alston indictment. Alston was accused of impairing and obstructing the government's lawful function of "collecting data and reports of currency transactions in excess of $10,000 . . .." The indictment in <u>Klein</u> was "framed to make a general charge of impeding and obstructing the Treasury Department in the collection of income taxes . . .." <u>Id.</u> at 916. Likewise, the indictment in this case was framed to make a general charge of impeding and obstructing the Treasury Department in the collection of CTRs. <u>See</u> <u>Derezinski</u>, 945 F.2d at 1010; <u>Farm & Home Savings Assoc.</u>, 932 F.2d at 1260; <u>Cambara</u>, 902 F.2d at 145–47.

The district court understood the indictment to allege a <u>Klein</u> conspiracy, and Alston has not disputed that the

indictment charges a crime under 18 U.S.C. § 371 that is separate from the structuring and conspiracy to structure charges. Paragraph 7(a) clearly alleges a <u>Klein</u> conspiracy to thwart the government's lawful purpose in collecting information from CTRs.[0]

The majority argues that <u>United States v. Murphy</u> supports its argument concerning the insufficiency of the Alston indictment. Majority Op. at ___ [slip op. at 16]. The indictment in <u>Murphy</u> was narrowly drawn to state that defendants conspired to defraud the IRS in its collection of information with regard to currency transactions. 809 F.2d 1427, 1431-32 (9th Cir. 1987). Specifically, the § 371 conspiracy to defraud charge rested "solely on the alleged falsehoods in the CTR [defendant] filed." <u>Id.</u> The court found, however, that defendant had in fact filed an accurate CTR. <u>Id.</u> at 1429-32. Therefore, the § 371 charge alleged in the indictment was manifestly unsupported by the evidence.

The government argued that although the CTR alone could not support a conviction on the § 371 charge, the court should

---

[0] The majority argues that "the entire indictment speaks only to <u>structuring activities</u> and contains no allegations that Alston defrauded the government in any other respect." Majority Op. at ___ [slip op. at 16]. The majority's characterization of the activities in the indictment as "<u>structuring</u> activities" begs the question. Whether Alston engaged in "structuring" activities is a legal question, not a factual matter. We could assume a different result just as easily by insisting that the indictment alleges only "<u>Klein</u>-conspiracy activities" and that the language in indictment paragraph 7(a) "sounds in <u>Klein</u>-conspiracy."

The "Overt Acts" section of the indictment alleges a series of activities by Alston and Rosa. Indictment, Overt Acts at ¶¶ 1-14; App. at 13a-16a. The majority's repeated characterization of these activities as "structuring activities" ignores Count I paragraph 7(a), which proffers an alternative characterization of the facts.

33

nevertheless entertain a charge of conspiracy to defraud based upon broader allegations of money laundering. Id. at 1432. The government argued that the CTR was a thread in a larger web of transactions designed to thwart the IRS in the performance of its duties. The court refused to consider these broader allegations because "[t]he indictment d[id] not allege a conspiracy to defraud premised upon the defendants' entire laundering operations. It is far more narrowly drawn . . .. Therefore, the indictment before us does not properly allege a conspiracy to defraud." Id. (citing United States v. Dela Espriella, 781 F.2d 1432, 1435 (9th Cir. 1986)).

This case is clearly distinguishable from Murphy. In Murphy, the government attempted to switch the factual basis and legal theory of its case from defendants' currency transactions to a broader charge encompassing the whole of defendants' money laundering operations, even though this broader charge was not alleged in the indictment. In this case, however, the government has not attempted to switch either its factual allegations or its legal theories. The indictment clearly alleged a § 371 conspiracy to defraud in Count I, paragraph 7(a), based upon the "Overt Acts" alleged in the indictment. The government has alleged the same Klein conspiracy to defraud based upon the same facts throughout the proceedings. Where the government attempted in Murphy to switch factual scenarios and legal theories midstream, the government in this case merely seeks affirmation of the conspiracy to defraud that it alleged in the district court. Murphy is completely inapposite.

34

## Mens Rea Necessary for Conviction

The majority's second major contention is that Alston cannot be convicted of a § 371 conspiracy to defraud the United States unless he possesses the requisite mens rea for conviction of structuring or conspiracy to structure as set out in Ratzlaf. The majority states that "the charge against Alston for conspiracy to defraud, which was premised exclusively on Alston's structuring activity, must be vacated for failure to prove the mens rea (knowledge of illegality) required not only by the underlying substantive offense of structuring, but also by the conspiracy to defraud by structuring." Majority Op. at ___ [slip op. at 15].

The majority refers to the crime of which Alston was convicted as "conspiracy to defraud by structuring" at least four times in its opinion. Majority Op. at ___ [slip op. at 3-4, 13, 15, 20]. This formulation is indicative of what I believe to be a fundamental flaw in the majority's conception of this case. See supra note 6. The crime for which Alston was actually convicted, of course, is a § 371 conspiracy to defraud the United States. The indictment alleges this conspiracy to defraud in a separate paragraph that does not include any reference to structuring. Indictment, Count I at ¶ 7(a); App. at 12a. Section 371 does not refer to "structuring" or conspiracy to defraud "by structuring." Congress included nothing in § 371 to indicate that the requirements for a § 5322 structuring conviction should be grafted onto a prosecution for a § 371 conspiracy to defraud the United States. Without aid of close statutory interpretation or

35

legislative history, the majority unilaterally amends § 371 to add the words "by structuring" and thereby allows all of the requirements for a § 5322 conviction to slip into a § 371 case where they do not belong.[0]

The gravamen of the majority's argument seems to be that there is something improper about basing the case for a §371 violation on the same so-called "structuring" behavior for which the government failed to obtain a conviction under § 5322. See, e.g., Majority Op. at ___ [slip op. at 15]. The majority observes that there is no difference between "the government's 'defraud' scenario and the 'structuring' scenario of which Alston was acquitted." Majority Op. at ___ [slip op. at 18]. Neither the government, nor the district court, nor I have ever argued that there is a difference between the factual scenarios supporting each charge. There simply are two alternative charges, brought pursuant to two different statutes, based upon the same factual scenario. Because 18 U.S.C. § 371 has a lower mens rea requirement than 31 U.S.C. § 5322, Alston's behavior is culpable under § 371, even though he lacked the mens rea to be convicted under § 5322.

It has long been recognized "that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." United States v. Batchelder, 442 U.S. 114,

---

[0] As we have already noted, the "defraud" clause of § 371 is an independent offense requiring no reference to any other statute in the U.S. Code. Vazquez, 319 F.2d at 384.

36

123-24 (1979). It does not matter that the government decides to invoke a general statute when a more specific criminal statute is available. United States v. Curran, 20 F.3d 560, 565-66 (3d Cir. 1994) (citing United States v. Woodward, 469 U.S. 105, 108 (1985) (per curiam); United States v. Beacon Brass Co., 344 U.S. 43, 46 (1952); United States v. Parsons, 967 F.2d 452, 456 (10th Cir. 1992); United States v. Hopkins, 916 F.2d 207, 218 (5th Cir. 1990); United States v. Hansen, 772 F.2d 940 (D.C. Cir. 1985); United States v. Gordon, 548 F.2d 743, 745 (8th Cir. 1977); United States v. Carter, 526 F.2d 1276, 1278 (5th Cir. 1976)); United States v. Derezinski, 945 F.2d 1006, 1010 (8th Cir. 1991).

Thus, the government could have pursued a conviction in this case under the "defraud" clause of 18 U.S.C. § 371 alone, without ever bringing a charge for the more specific offenses of structuring or conspiracy to structure and without ever referencing 31 U.S.C. § 5322. In that case, there would be no question of characterizing the facts as "structuring" or of imposing the Ratzlaf mens rea on a § 371 case. We would simply examine the facts and compare them with the elements and mens rea necessary for conviction of a § 371 violation to determine whether Alston is guilty of a Klein conspiracy to defraud the United States. See supra Part I. I submit that this is essentially the case we now have before us. If Alston's actions satisfied the requirements for a § 371 conspiracy to defraud the United States, it should not matter that he was acquitted of independent, narrower charges in a multiple-count indictment. Unless the majority can explain precisely which element of a §371

37

conspiracy to defraud the United States is lacking, we should affirm the district court.

The Seventh Circuit's opinion in United States v. Jackson is indistinguishable from this case. 33 F.3d 866 (7th Cir. 1994). In Jackson, defendants were originally convicted of structuring, conspiracy to structure, and conspiracy to defraud the United States--the exact same charges of which Alston was originally convicted. Id. at 867. Pursuant to Ratzlaf, the court reversed the structuring and conspiracy to structure convictions, but affirmed the § 371 conspiracy to defraud. Id. at 868.

The majority argues that Jackson is distinguishable because it "involved additional charges in the indictment and additional evidence produced at trial, over and beyond that required for a conviction for pre-1994 structuring." Majority Op. at ___ [slip op. at 19]. Contrary to the majority's assertion, however, the Jackson court never said that additional charges or evidence were necessary for a conviction on the § 371 count. The court's reasoning was quite clear:

> [Defendant's] first contention--that Ratzlaf requires reversal of the § 371 conviction--is misplaced because the government did not have to demonstrate that the defendants violated the antistructuring laws. Ratzlaf's holding concerning the meaning of "willfully violating" in the antistructuring laws, therefore, has no bearing on the defendants' § 371 convictions; § 371 contains no such language.

Jackson, 33 F.3d at 871 (emphasis added).

The majority's attempts to distinguish Jackson miss the mark. First, the majority argues that it is significant that the

38

<u>Jackson</u> indictment, in charging the § 371 count, "never mentions a structuring violation or the relevant antistructuring statutes."  Majority Op. at ___ [slip op. at 19] (quoting <u>Jackson</u>, 33 F.3d at 870).  An examination of this sentence in context shows that it does not deserve the prominence that the majority gives it:

> [T]he government argues that a § 371 conspiracy to defraud the United States is an independent violation that need not be based on the violation of another substantive statute.  The government points out that count one of the indictment in this case, which sets forth the § 371 charge, never mentions a structuring violation or the relevant antistructuring statutes.  Count one charges a conspiracy "to defraud the United States"; it does not allege a conspiracy "to commit any offense against the United States."

<u>Jackson</u>, 33 F.3d at 870.  The <u>Jackson</u> court was merely emphasizing that the government alleged an independent conspiracy to defraud count and that that count is not dependent upon the other structuring counts--a point that I have emphasized and that supports a conviction on the independent § 371 count.  The court meant nothing more by this statement, and it set out no general rule.

The majority's selected quotation from <u>Jackson</u> also fails to distinguish the language in the <u>Jackson</u> indictment from the language in the <u>Alston</u> indictment.  Paragraph 7(a) of the <u>Alston</u> indictment, like Count I in <u>Jackson</u>, "never mentions a structuring violation or the relevant antistructuring statutes." Even though the § 371 conspiracy to defraud charge is based upon the same facts as the structuring charges, it is framed as an

39

independent allegation in paragraph 7(a).  Thus any perceived "distinction" based upon this language is entirely illusory.

The majority's second "distinction" is equally futile. The majority argues that it is significant that Jackson involved other "extensive evidence" beyond structuring activity to demonstrate the conspiracy to defraud.  As examples of such extensive evidence, the majority cites the fact that defendants had no wage or income and that they spent over $300,000 to purchase homes and exotic automobiles.  Majority Op. at ___ [slip op. at 19].

The Jackson court, however, never indicated that these additional facts were necessary for a conviction under § 371. The court "set[s] forth in detail the structuring activity of the defendants--as well as other evidence--that demonstrates a conspiracy to defraud the United States under § 371."  Jackson, 33 F.3d at 868.  It does not mention or even allude to this "other evidence" when it explains its reasoning, however, and it never implies that such "other evidence" is essential for a conviction.  Id. at 870-71.

The majority not only fails to explain why other evidence of a conspiracy to defraud the United States is necessary for a conviction; it ignores the existence of additional evidence in this case.  There was evidence that Alston, like the defendants in Jackson, failed to file income tax returns.  Compare Alston, Crim. No. 93-445-1 at 10; Appellant's App. at 40 with Jackson, 33 F.3d at 869.  The majority offers no guidance as to how much "other evidence" is sufficient to support

40

a § 371 conviction. Surely a failure to file income taxes is an indication that defendants had a motive to defraud the United States of information about large cash purchases that would otherwise appear in CTRs. Again, the majority finds a "distinction" when there is no significant difference between the factual scenarios.

United States v. Derezinski, a case very similar to the case at bar,[0] also supports the district court's reasoning. Derezinski was prosecuted under the "defraud" clause of § 371, even though he might have been prosecuted under the more specific "offense" clause. 945 F.2d at 1010. Since specific statutes existed, Derezinski argued, "it is no longer appropriate for the Government to prosecute conspiracies to commit acts governed by those statutes under the general defraud clause." Id. The Eighth Circuit firmly rejected this argument:

> [Defendant's] arguments attempt to draw our attention away from the true issue in this case. His claim that the Government is really charging him with conspiring to violate [specific substantive statutes] is simply not true. The Government has steadfastly persisted in proving that [the defendant] participated in a Klein conspiracy to defraud the United States. While it may be true that the Government could have also charged [the defendant] under the specific offense clause of section 371, it is well settled that when conduct violates more than one criminal statute, the Government may choose which statute it will apply. [citing Batchelder]. The Government was within its discretion when it decided to prosecute [the defendant] under the general defraud clause of section 371.

---

[0] Like the defendant in this case, Derezinski was prosecuted under the defraud clause of § 371 for a Klein conspiracy that consisted, inter alia, of circumventing the financial reporting requirements of a financial institution. Derezinski, 945 F.2d at 1009-10.

41

_Id._  It should make no difference to the § 371 prosecution in this case that the government failed to obtain convictions under the substantive statutes.

Most importantly, the Eighth Circuit denied Derezinski's challenge to the district court's jury charge regarding intent.  Derezinski argued that because the criminal tax statute defining the specific offense required a showing of "willfulness" (as defined by _Cheek v. United States_), the government should bear the burden of demonstrating the same level of willfulness when pursuing a conviction under the "defraud" clause of § 371.  _Id._ at 1012 (citing _Cheek v. United States_, 498 U.S. 604 (1991)).  The Eighth Circuit flatly rejected this contention:  "_Cheek_ does not apply to this case because the Government prosecuted Derezinski under a general conspiracy statute, not a criminal tax statute, and <u>because 'willfulness' is not an express element of section 371</u>."  Likewise, _Ratzlaf_ does not apply to this case.  The government prosecution at issue is pursuant to § 371, not § 5322.  "Willfulness" is not an express element of § 371.

The majority offers _United States v. Curran_ as authority to support its argument concerning _mens_ _rea_.  Majority Op. at ___ [slip op. at 13-14] (citing _United States v. Curran_, 20 F.3d 560 (3d Cir. 1994)).  The majority's reading of _Curran_ would make § 371 dependent upon the level of _mens_ _rea_ necessary for a conviction under § 5322.  Thus the majority's analysis of _Curran_ conflicts directly with _Vazquez_'s statement that the "defraud" clause of § 371 is an independent charge that need be

42

based on no other part of the U.S. Code.  It also conflicts with the analysis of § 371 in <u>Derezinski</u> and <u>Jackson</u>.  I do not believe that we intended in <u>Curran</u> to overrule <u>Vazquez</u> or to change radically our reading of the defraud clause of § 371.  I also do not believe that the majority's interpretation of <u>Curran</u>'s holding comports with a close reading of that case.

The defendant in <u>Curran</u> was prosecuted for causing campaign treasurers to make false statements to the Federal Election Commission (FEC).  The defendant could not be prosecuted directly under 18 U.S.C. § 1001 for concealing material facts and making false representations, however, because it was the campaign treasurers, rather than the defendant, who prepared the false reports and submitted them to the Commission.  <u>Curran</u>, 20 F.3d at 567.  The government therefore used 18 U.S.C. § 2(b) in conjunction with § 1001 to charge defendant with causing campaign treasurers to file false reports.  Section 2(b), like 31 U.S.C. §5322, requires "willfulness" on the part of the defendant in order to sustain a conviction.  Relying on <u>Ratzlaf</u>, we interpreted § 2(b) "willfulness" in cases brought under §§ 2(b) and 1001 in the federal election law context to mean that the prosecution must prove that "defendant knew of the treasurers' reporting obligations, that he attempted to frustrate those obligations, and <u>that he knew his conduct was unlawful</u>."  <u>Id.</u> at 569 (emphasis added).

The indictment in <u>Curran</u> alleged that defendant caused treasurers of various campaign committees to make incorrect reports to the FEC.  <u>Id.</u>  Nevertheless, the trial judge

43

erroneously charged the jury that "as a matter of law, . . . defendant had a legal duty to disclose the facts in question to the agency in question, the Federal Election Commission or to make certain that [the] information would have gotten to them." Id. (emphasis added). In regard to intent, the trial judge erroneously failed to instruct the jury that it must find that the defendant knew that his conduct was unlawful. Id. We therefore overturned the district court on two grounds: (1) its charge erroneously placed the reporting duty directly on the defendant and (2) the instruction on § 2(b) and § 1001 willfulness did not communicate the proper mens rea.

The majority's discussion of Curran begins with the definition of "willfulness" as it appears in §§ 1001 and 2(b). Majority Op. at ___ [slip op. at 14]. Because there is no "willfulness" requirement in § 371, this part of the Curran opinion is not directly applicable to this case. See discussion Part I, supra. The majority then addresses the section of the Curran opinion dealing with the "defraud" clause of § 371. The majority quotes Curran as holding that the district court's misstatement of the legal standard for "willfulness" "undermined not only the substantive counts, but the conspiracy [to defraud] one as well. The essence of conspiracy is an agreement to commit an act that is illegal." Majority Op. at ___ [slip op. at 14] (citing Curran, 20 F.3d at 571).

A careful reading of Curran demonstrates that the majority's interpretation of this dictum is plainly incorrect. The paragraph from which the majority quotes reads in full:

44

As stated earlier, the misstatement of the law applicable to the defendant's legal duty to disclose facts to the Commission amounted to plain error. This misstatement undermined not only the substantive counts, but the conspiracy one as well. The essence of conspiracy is an agreement to commit an act that is illegal. If a jury is misled into considering as unlawful the omission of an act that the defendant is under no duty to perform, then a finding of conspiracy based on such conduct cannot stand. It follows that the conspiracy count must therefore be vacated.

Curran, 20 F.3d at 571 (citations omitted). Reading these sentences in context, it is clear that we refer not to the district court's misstatement of the legal standard for "willfulness," as the majority contends, but to its misstatement of the defendant's duty to report to the FEC. This portion of Curran, like most of the opinion, discusses the duty of defendant relative to that of the campaign treasurers, not the mens rea requirement for a § 371 conspiracy to defraud.

The majority's argument that Curran makes the defraud clause of § 371 dependent on the intent necessary for conviction of another offense, therefore, hinges entirely on one paragraph of dictum. That paragraph says in pertinent part that:

The comments we have previously made about the failings of the instruction on intent apply to the conspiracy count as well. As noted in American Investors, 879 F.2d at 1100, '[i]n order to prove a conspiracy, the government must show an agreement to commit an unlawful act combined with intent to commit the underlying offense.' On retrial, the instructions on intent as to the conspiracy count must track those applicable to the substantive counts.

Id.

Curran's restatement of the general rule for conspiracy does nothing to change the outcome in this case. If the majority insists on reading this dictum to make § 371 dependent

45

upon §5322, Curran conflicts with Vazquez's holding that a count drawn under the defraud clause "need refer to no other statute than §371." Vazquez, 319 F.2d at 384; see also Jackson, 33 F.3d at 870; Derezinski, 945 F.2d at 1010. In case of a conflict, I believe that our decision is controlled by Vazquez.

Moreover, the quote from American Investors, upon which the Curran dictum relies, was taken from a general discussion of conspiracy, without specific reference to the "defraud" clause of § 371 or to Vazquez. Vazquez, on the other hand, explicitly stated a general rule for the "defraud" clause of § 371, 319 F.2d at 384; see Glasser v. United States, 315 U.S. 60, 67 (1942); a rule followed by this court and other courts in similar cases. See, e.g., Vogt, 910 F.2d 1184 (3d Cir. 1990); Jackson, 33 F.3d 866 (7th Cir. 1994); Derezinski, 945 F.2d 1006 (8th Cir. 1991). Three sentences of dictum in a case almost entirely concerned with another legal issue should not serve to subvert our precedent as well as Congress' expression of the mens rea necessary for conviction under 18 U.S.C. § 371. The Curran language is simply too slender a reed to support the weight that the majority wishes it to bear.

For the above reasons, I conclude that Alston satisfies all of the elements necessary for conviction of a Klein conspiracy to defraud the United States under 18 U.S.C. § 371. Nothing in Ratzlaf or in the structuring statutes themselves changes this fact, and the majority barely addresses it. I therefore respectfully dissent.